1                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF CONNECTICUT
2
  _____
3                               )
  JANE DOE,                     )    No. 3:15-cv-01123-AVC
4                               )    141 Church Street
              vs.               )    New Haven, Connecticut
5                               )
  HICKS, et al.                 )    December 10, 2015
6 _____)

7                      TRANSCRIPT OF MOTION HEARING

8                 BEFORE THE HONORABLE SARAH A.L. MERRIAM

9                     UNITED STATES MAGISTRATE JUDGE

10
  APPEARANCES:
11
  For the Plaintiff:        EDWARD F. RUBERRY, ESQ.
12                          RUBERRY, STALMACK & GARVEY, LLC
                            500 West Madison Street
13                          Suite 2300
                            Chicago, IL 60661
14
                            JOHN M. STALMACK, ESQ.
15                          ALEXANDER R. HESS, ESQ.
                            RUBERRY, STALMACK & GARVEY
16                          10 South LaSalle Street
                            Suite 1800
17                          Chicago, IL 60661

18                          WILLIAM B. WYNNE, ESQ.
                            ADLER LAW GROUP LLC
19                          111 Founders Plaza
                            Suite 1102
20                          East Hartford, CT 06108

21

22

23

24

25

```
1    APPEARANCES (CONT'D)

2    For the Defendants:
                              WILLIAM J. SHEA, ESQ.
3                             LAW OFIFCES OF MEEHAN, TURRET
                              & ROSENBAUM
4                             108 Leigus Road
                              1st Floor
5                             Wallingford, CT 06492

6
                              JENNIFER ANNE CASEY, ESQ.
7                             AHMUTY, DEMERS & MCMANUS
                              200 I.U. Willets Road
8                             Albertson, NY 11507

9                             JOHN STEPHEN PAPA, ESQ.
                              HOWARD, KOHN, SPRAGUE &
10                            FITZGERALD, LLP
                              237 Buckingham Street
11                            Hartford, CT 06126

12

13   ESR OPERATOR:            FTR

14

15

16

17

18

19

20

21

22
                         Jessica Simckes
23                           eScribers
                      700 West 192nd Street
24                         Suite #607
                      New York, NY 10040
25                        (973) 406-2250
```

1                              I N D E X

2    RULINGS:                                    PAGE      LINE
     Liberty is ordered to provide a
3    Reservation of rights letter                 10        25
     Motion 51 to take deposition
4    From Jeffrey LaPorto is granted              24        17
     Motion 56 for protective order granted
5    in part and denied in part                   37        23
     Motion 57 to compel is granted
6                                                 39        17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   (3:50 O'CLOCK, P.M.)

 2          THE CLERK:  The honorable United States District

 3  Court is now open after recess.  The Honorable Sarah Merriam

 4  presiding.

 5          THE COURT:  All right we are here.  You can -- please

 6  be seated.  We are here in the matter of Doe v. Hicks et al.

 7  The case number is 3:15-cv-1123, assigned to Judge Covello.

 8  If I could have appearances of counsel for the record, please?

 9          MR. RUBERRY:  Edward Ruberry, on behalf of the

10  plaintiff, Jane Doe.

11          THE COURT:  Good afternoon.

12          MR. HESS:  Alex Hess, on behalf of plaintiff.

13          THE COURT:  Good afternoon.

14          MR. WYNNE:  William Wynne, on behalf of plaintiff.

15          THE COURT:  All right.  Putting faces to names.

16          Okay, defendants.

17          MR. PAPA:  Your Honor, my name is John Stephen Papa,

18  Howard, Kohn, Sprague & Fitzgerald.  I'm here for the

19  defendant, Choice.

20          THE COURT:  Okay.

21          MR. SHEA:  William Shea, from Meehan, Turret &

22  Rosenbaum representing Angel Hicks and Sahil, Inc.

23          THE COURT:  Do you have an appearance?

24          MR. SHEA:  I don't have a specific appearance for

25  myself.  I am covering for Andrew Turret.  I can do an
```

1    appearance, Your Honor.

2            THE COURT:  Okay, thank you.  And I'm sorry, your

3    name again?

4            MR. SHEA:  William Shea.

5            THE COURT:  Thank you.  And also with you?

6            MS. CASEY:  Jennifer Casey for Choice.  I'm personal

7    counsel; Ahmuty, Demers & McManus.

8            THE COURT:  All right, thank you.  I have Aiki Law

9    under your appearance.

10           MS. CASEY:  Aiki Law?  I don't know.

11           THE COURT:  Ever heard of them?

12           MS. CASEY:  No.

13           THE COURT:  You apparently work there.

14           MS. CASEY:  Oh.

15           THE COURT:  So I hope you're enjoying your

16   employment.

17           MS. CASEY:  Something new.

18           THE COURT:  Where're you from?  What --

19           MS. CASEY:  I'm in New York, but I'm admitted in

20   Connecticut, Your Honor.

21           THE COURT:  Okay, so this says you work in Seattle?

22           MS. CASEY:  Isn't that odd.

23           THE COURT:  So we should maybe touch base with Bree

24   (ph.).

25           MS. CASEY:  You know, someone told me that, that --

1          MR. RUBERRY:  I was the one that told you that.  Ed

2     Rubbery, standing up and speaking.  But I told you, I said

3     what are you doing commuting from Seattle to here?

4          MS. CASEY:  Yeah, Your Honor, I'm sorry I don't know

5     why that's in there like that.

6          THE COURT:  All right, it's probably someone with the

7     same name as you.

8          MS. CASEY:  Oh, maybe that.

9          THE COURT:  Or one digit off on the number, so --

10          MS. CASEY:  Okay.

11          THE COURT:  All right so we are here for case

12     management purposes in this case to address some pending

13     discovery motions and really just to make sure we get back on

14     track with a scheduling order in this case.

15          I'll note for the record that I think there was a

16     left hand and right hand not communicating problem in Judge

17     Covello's chambers, because they referred the case to me for

18     case management but then acted on a motion to continue.  So

19     that's been acted on.  There's one document, docket number 58,

20     was granting the motion for extension that was docketed at

21     number 43.  And that came direct from Judge Covello's

22     chambers.  So I think they probably have a practice of

23     admit -- of granting first continuances or something; probably

24     happened automatically.

25          So in any event, other than that we have still

1    pending a variety of motions.  So I guess my first question is

2    what is the status of the discovery responses from Choice that

3    were under Judge Covello's extended order, due yesterday?

4              MS. CASEY:  Your Honor, I served them yesterday.

5              THE COURT:  All right.

6              MR. RUBERRY:  If I may, Your Honor?

7              THE COURT:  Yes.

8              MR. RUBERRY:  With all due respect to counsel, it's

9    the plaintiff's position they're deficient.

10             THE COURT:  Okay, but they served them, right?

11             MR. RUBERRY:  They served us with the document, yes;

12   yes, Your Honor.

13             THE COURT:  Okay, so is it deficient in that -- well,

14   in brief, in what way?

15             MR. RUBERRY:  Three things, Your Honor.  When you

16   have an insurance policy, you have endorsements.

17             THE COURT:  Okay.

18             MR. RUBERRY:  Because you can give coverage and take

19   it away.  We got a policy with no endorsements.  So the

20   position is that --

21             THE COURT:  Incomplete policy.

22             MR. RUBERRY:  -- incomplete.

23             THE COURT:  Okay.

24             MR. RUBERRY:  Secondly, in order to make a

25   determination you have to have a -- if the reservation of

 1    rights letter's been issued, we've asked for that to be turned

 2    over, because even if it was issued to Liberty, we now know

 3    that -- I think it said Fireman's Fund, but the papers said

 4    Allianz.  Allianz would follow form.  So even though they

 5    didn't have reservation of rights, if Liberty did -- and we've

 6    asked for reservation of rights --

 7              THE COURT:  Okay.

 8              MR. RUBERRY:  -- or of representation.  Third thing,

 9    Judge, in these cases is -- it's called the primary policy,

10    Your Honor, it's a wasting policy.

11              THE COURT:  Um-hm.

12              MR. RUBERRY:  Your Honor knows that.

13              And the second, as far as the excess policy, if there

14    was other accidents, other things at the hotel, or probably

15    the motel, it would decrease.  So we've asked for three

16    things, is there a reservation of rights letter and has it

17    been wasting?  And we have no answers.

18              THE COURT:  Okay, counsel?

19              MS. CASEY:  Your Honor, if I may respond?  I got the

20    information late last night from the excess carrier.  I just

21    want to check with counsel.

22              Now, the policy you're referring to is the excess

23    policy not the primary policy.  Is that what you're referring

24    to?

25              THE COURT:  When we're talking about the lack of

1    endorsements?

2         MS. CASEY:  Yes.

3         MR. RUBERRY:  The policy you set aside did not see

4    any endorsements.  They were e-mailed to me on the way --

5         MS. CASEY:  Okay, so all I sent to you were the

6    excess, because I don't have the Liberty policy.  And I

7    believe that counsel with Liberty was sending you that policy.

8         MR. RUBERRY:  I'm talking about your -- with all due

9    respect, counsel, I did not see any endorsements on the

10   Allianz policy.

11        MS. CASEY:  Okay.

12        MR. RUBERRY:  And the endorsements -- without the

13   endorsements, the policy --

14        THE COURT:  Okay, so what we'll do is, I'll ask both

15   counsel, since you haven't had time to review it thoroughly,

16   as to this policy, that you --

17        MS. CASEY:  Well, I have some answers for him to some

18   of these questions.

19        THE COURT:  Okay.

20        MS. CASEY:  Because I --

21        THE COURT:  Okay.

22        MS. CASEY:  If I may, Your Honor?

23        THE COURT:  Sure.

24        MS. CASEY:  With respect to the reservation of

25   rights, there had been no reservation of rights letters issued

1   by Liberty.  I requested any further clarification.  I have

2   not received any clarification back from Liberty.  I'm not

3   working for Liberty -- for them, so they're not -- they didn't

4   send me a response to that request, when I asked her.  But I

5   was told verbally that there's no reservation of rights; that

6   they are fully indemnifying and defending Choice under their

7   policy.

8           THE COURT:  Okay.

9           MR. RUBERRY:  If we have a representation from

10  Liberty, then -- because you follow form -- if there is a

11  reservation, you followed it.  So it's up to Liberty to tell

12  us if there's a reservation of rights.

13          THE COURT:  Okay.

14          MS. CASEY:  It's understanding is there is none.

15          THE COURT:  Okay, so has the request been made

16  directly to Liberty?

17          MR. RUBERRY:  Yes, so --

18          MS. CASEY:  I e-mailed the adjustor this morning

19  asking her to clarify the points.  Because plaintiff's counsel

20  sent me an e-mail asking for clarification about certain

21  things.  So I sent an e-mail to her requesting that, and I

22  have not received a --

23          THE COURT:  All right.

24          MS. CASEY:  -- a response back from her.

25          THE COURT:  So what I'll do is, I'll enter an order

1    that you can convey to the Liberty representatives, that

2    either any reservations of rights letters be provided within a

3    week from today or a written affirmation that there is no

4    reservation of rights being exercised in this case.

5            MS. CASEY:  Okay, and then, Your Honor, with respect

6    to the other issues raised by the plaintiff's counsel, it's my

7    understanding that there's no additional information that

8    needs to be -- I mean I understand it's a wasting policy, but

9    there been no other losses on this policy.  If there's other

10   insureds on the policy that they are not going to release

11   those names, but every insured on that policy is insured to

12   the full extent.

13           THE COURT:  Okay.

14           MS. CASEY:  Ten million dollars.

15           THE COURT:  And has some documentation been provided

16   or at least a letter in affirmation of that fact?

17           MS. CASEY:  I have an e-mail from the adjustor --

18   from the excess adjustor.

19           THE COURT:  Okay.

20           MS. CASEY:  That he forwarded to me at 12:09 today.

21           THE COURT:  All right.  So Mr. Ruberry, I guess I'll

22   ask, these were requests for production; is there also an

23   interrogatory that would go to these points?

24           MR. RUBERRY:  Yes, there were interrogatories that

25   asked for this and as Your Honor's aware of the Federal Rules,

1    this information should have been turned over with the

2    disclosures.

3           But if I may, we do have counsel representing Sahil.

4    Liberty's the primary.  And I've sent directions to both

5    counsel for Liberty as well as counsel for the excess carrier.

6    It's custom --

7           THE COURT:  Well, they're not counsel for Liberty,

8    let's be clear.

9           MR. RUBERRY:  I --

10          THE COURT:  Counsel in this case are for either

11   Choice, Sahil, or Hicks.  So they may be paid and they may be

12   working for firms that have the address -- the e-mail address

13   at Libertymutual.com, but their clients are Sahil, Hicks, and

14   Choice, right?

15          MR. RUBERRY:  Thank you, Your Honor, I absolutely

16   stand corrected.

17          THE COURT:  That wasn't for your benefit so much as

18   for the record, just -- I know you understand that.

19          MR. RUBERRY:  But the counsel retained by Liberty --

20          THE COURT:  Yes.

21          MR. RUBERRY:  -- to represent Sahil --

22          THE COURT:  Yes.

23          MR. RUBERRY:  -- it would seem to me that if a

24   reservation of rights letter had gone from Liberty, they would

25   have to have a copy of it.

1          THE COURT:  To Choice or to Sahil?

2          MR. RUBERRY:  To Sahil.

3          THE COURT:  Well we're talking to counsel for Choice

4   right now.

5          MR. RUBERRY:  Okay.

6          THE COURT:  So I want to make sure we separate the

7   issues.

8          MR. RUBERRY:  Is the counsel for Choice -- our issues

9   are real simple, that -- I can have conversations with

10  counsel.  If we need a representation from someone that the

11  ten million dollars, the excess policy has not been

12  diminished.  She says she'll do that, we accept her word.  But

13  I heard for the second time that they would have to mark off

14  certain names as additional insureds.  And I do this work; and

15  insurance can be very complicated; and we would ask that

16  instead of redacting names that they file it under seal or

17  give it to me under protective order, because we just want to

18  make sure how much money is there before we go forward.

19         THE COURT:  Well, why are the names necessary to

20  knowing how much money?

21         MR. RUBERRY:  Well, for instance, if you insured

22  seven or eight different entities, I could go on PACER and see

23  if they've been sued.

24         THE COURT:  Well, won't there be a representation

25  that there is no claim currently as to those other -- but they

 1    would say, as to the other entities that are covered under

 2    this umbrella, there is no current claim that would reduce the

 3    available pool.

 4              MR. RUBERRY:  That would be fine.  Usually what we

 5    get, Your Honor, it's customary to just get, no money's been

 6    paid on these claims, so it's not been impaired.

 7              THE COURT:  Got it.

 8              MR. RUBERRY:  But say there was a fire -- in case

 9    right now where a hundred million --

10              THE COURT:  I understand that you understand -- your

11    concern is that pending claims that have not been paid could

12    also be at issue.

13              MR. RUBERRY:  Yes, Your Honor.

14              MS. CASEY:  There are none, Your Honor.  If you'd

15    like, I can give you the e-mail from the excess carrier that

16    addresses all of counsel's questions so we can deal with these

17    issues, if you'd like.

18              THE COURT:  What I'd like you to do is for you all to

19    exchange that information yourselves.

20              MS. CASEY:  Okay.

21              THE COURT:  I don't need a copy of it.

22              MS. CASEY:  Okay.

23              THE COURT:  But what I'll ask you to do is to share

24    that with Mr. Ruberry today, and then if there is an issue

25    just as to form or a missing clarification, that you just try

1    to sort that out and get something in writing that is

2    satisfactory.  And if -- well, I will leave it to you all to

3    decide whether an e-mail is a sufficient way of conveying that

4    information.

5        MR. RUBERRY:  Thank you, Your Honor.

6        THE COURT:  All right.  And does that e-mail have

7    this representation about the reservation of rights issue as

8    well, or is that, this is about the wasting?

9        MS. CASEY:  Your Honor, he merely says that if

10   there's any -- it reiterates the fact that if Liberty had a

11   reservation of rights then it would go through to the excess

12   carrier, but there was none.

13       THE COURT:  Okay.

14       MS. CASEY:  And I also have the letter that -- the

15   tender of acceptance.  There's nothing in the letter when they

16   accepted our tender saying there's any reservation of rights,

17   and that was exchanged already.

18       THE COURT:  Okay, so if you can -- yeah, if you'd

19   just make that available to Mr. Ruberry.  Mr. Ruberry, if

20   there's something in that that is not sufficient, if you could

21   express that to them.  Again within a week from today whatever

22   needs to be disclosed as to those policies needs to be

23   disclosed.

24       MR. RUBERRY:  Thank you, Judge.

25       THE COURT:  All right, and as to Sahil, is there an

1    issue about us missing the policy?

2              MR. RUBERRY:  Well, Your Honor, there's two issues.

3              THE COURT:  Okay.

4              MR. RUBERRY:  One, and we can kind of cut through it,

5    if Liberty issued a reservation of rights, counsel would have

6    gotten a copy of that.  If they didn't, then this can go a

7    long way from taking care of this issue.

8              The second is, is it's my understanding that this is

9    a wasting policy; that there's -- there is a one-million-

10   dollar Liberty policy.  I've been told that in some

11   correspondence, there was a ten-million-dollar Fireman Fund;

12   the documents I got was Allianz.  I understand Allianz did

13   purchase Fireman's Fund.  But if private counsel is being

14   paid, either through -- when I say Liberty -- if Liberty is

15   paying, either -- I understand we have house counsel -- but my

16   opponent Mr. Papa, if he's being paid then the policy is being

17   diminished.  We want to know, for settlement talks, how much

18   has been diminished.

19             THE COURT:  Okay.

20             MR. RUBERRY:  And that's the information we've asked

21   for.

22             THE COURT:  And then there was also a motion to

23   compel that contends that the complete policy hasn't been

24   turned over as to Sahil, right?

25             MR. RUBERRY:  Your Honor, I made it to Sahil --

1          THE COURT:  Has that been resolved?

2          MR. RUBERRY:  -- because I was talking with Ms.

3    Casey, but until I filed that motion, no policy had been

4    turned over.

5          THE COURT:  Right.

6          MR. RUBERRY:  And now we have no policy from Allianz.

7    Yes, so that's number one.  Number two, if counsel wants to

8    represent there's no reservation of rights, that's fine; and

9    if they can say how much has been wasted from either policy

10   that would take care of that motion, Your Honor.

11         THE COURT:  Okay, so I have moved on from Choice.

12   Were we still -- were you still on Choice there?

13         I thought we were done with Choice, but if your

14   statements just now were about Choice, I want to make sure I'm

15   on the same --

16         MR. RUBERRY:  No that was about Liberty.

17         THE COURT:  Well, but Liberty is not a party.

18         MR. RUBERRY:  No, it was about Sahil.

19         THE COURT:  Sahil.  Okay, thank you.

20         MR. RUBERRY:  Excuse me I keep saying -- the Liberty

21   policy.

22         THE COURT:  Okay, so as to Sahil, the motion to

23   compel, document number 57:  what is the status of that?  Just

24   help me understand that again, Mr. Ruberry.

25         MR. RUBERRY:  It's very simple.  Since counsel, Mr.

1 Turret's firm, represents Sahil, if a reservation of rights

2 letter was issued, they'd have it.  So I'm asking --

3    THE COURT:  Right, what I'm asking you is did you get

4 anything that you've asked for in document number 57?

5    MR. RUBERRY:  No, Your Honor.

6    THE COURT:  Has it been changed?

7    MR. RUBERRY:  No, Your Honor, it has not.

8    THE COURT:  Okay, counsel for Sahil, what's up with

9 that?

10    MR. SHEA:  Was that the request for the policy?

11    THE COURT:  Yes, document number 57, plaintiff's

12 motion to compel production of umbrella policy by defendant

13 Sahil.

14    MR. SHEA:  It --

15    THE COURT:  Has that policy been disclosed?

16    MR. SHEA:  It was my understanding that Attorney

17 Turret did send counsel a copy of the policy.

18    THE COURT:  Okay.

19    MR. RUBERRY:  We also asked for any reservation of

20 rights letters.

21    THE COURT:  Okay, all right, but hang on.

22    MR. RUBERRY:  Yes.

23    THE COURT:  Fist, Mr. Ruberry, did you get the policy

24 or not?  The motions asked for the policy, and I'm trying to

25 figure out if you've gotten the policy requested in document

1  number 57.

2          MR. RUBERRY:  No, and I'll explain, Your Honor.

3          THE COURT:  Okay.

4          MR. RUBERRY:  They sent us the wrong policy.

5          THE COURT:  Okay, so did you write them back and say

6  you sent us the wrong policy?

7          MR. RUBERRY:  Yes, Your Honor.

8          THE COURT:  Okay, so Mr. Shea?

9          MR. SHEA:  Yes, Your Honor.

10          THE COURT:  I take it you'll communicate with Mr.

11  Turret about this?

12          MR. SHEA:  Yes, and I --

13          THE COURT:  Mr. Ruberry, when did you get the wrong

14  policy?

15          MR. RUBERRY:  This morning at 6:42.

16          THE COURT:  Oh, okay.

17          MR. SHEA:  And there was an --

18          MR. RUBERRY:  Central time.

19          MR. SHEA:  -- there was an e-mail, Your Honor, saying

20  this is the wrong policy, please get me the right policy, and

21  I think Attorney Turret responded and said I will work on

22  that.

23          THE COURT:  Okay, so you have sent a policy, it

24  turned out to be wrong, again within a week from today the

25  full -- the complete policy, the correct policy, needs to be

1   in their hands.  And that doesn't mean that a week today you

2   can send it to them, it means that tomorrow, you should send

3   it to them and that way we have time to figure out if it's the

4   wrong policy or it's missing something.

5          MR. SHEA:  Yes, Your Honor.

6          THE COURT:  Okay.  So in addition to the policy

7   itself, Mr. Ruberry, you also are concerned that you haven't

8   received sort of confirmation as to whether there has been a

9   reservation of rights under this other -- under the Sahil and

10  Hicks policies?

11         MR. RUBERRY:  Yes, Your Honor.

12         THE COURT:  Okay, and Mr. Shea, what's the status of

13  providing that information?

14         MR. SHEA:  I don't have that information; I can't --

15  I don't have the information to answer the Court or counsel as

16  to whether that exists or not.  If we are subject to the same

17  week that Your Honor just gave co-counsel, we will comply with

18  that.

19         THE COURT:  Okay, and again I will just make sure all

20  counsel understands that that does not mean that 4:07 one week

21  from today is the first time it's mailed.  That you should

22  be -- the disclosures should have been made already.  I think

23  thee deadlines were November 9th in the original 26(f), and

24  then they were November 24th, and then they were December 9th,

25  and now it's December 10th.  So they should be forthwith; and

1    that in a week from now I'm going to have the counsel file a

2    status report letting me know.  So as a practical matter I

3    guess you need to get it to them at least five or six days

4    from now so that by the seventh day you all can file a joint

5    status report letting me know that this is all resolved.

6              MR. SHEA:  Yes, Your Honor.

7              THE COURT:  So I'll take document number 57 under

8    advisement, pending that report in a week.

9              MR. RUBERRY:  There was one more request, Your Honor.

10             THE COURT:  Okay.

11             MR. RUBERRY:  With the Liberty policy, how much had

12   it been impaired before we could even settlement talks, we'd

13   have to know how --

14             THE COURT:  Right.

15             MR. RUBERRY:  -- how much is gone.

16             THE COURT:  Is there any objection sort of generally,

17   to providing that information?

18             MR. SHEA:  What information are you looking for?

19             MR. RUBERRY:  Impaired, because you have a wasting

20   policy.  If say it was a million dollars, but it's down --

21             THE COURT:  You've paid out 100,000 in fees and

22   costs --

23             MR. RUBERRY:  -- 500 grand.

24             MR. SHEA:  Right.

25             THE COURT:  Is there an objection to providing that

1    information?

2          MR. SHEA:  I don't think so, Your Honor, but I would

3    have to run that by the representative.

4          THE COURT:  All right, so why don't -- understanding

5    that that's Mr. Ruberry's request --

6          MR. SHEA:  Yes.

7          THE COURT:   -- if you're going to have an objection,

8    why don't you make that objection to Mr. Ruberry by Monday.

9          MR. SHEA:  Yes, Your Honor.

10          THE COURT:  And again then update me on that in the

11    status report a week from today.

12          MR. RUBERRY:  Yes, Your Honor.

13          THE COURT:  That issue as well, okay.

14          MR. SHEA:  Yes.

15          THE COURT:  All right, we have -- are there other --

16    before we move to the protective order and the deposition

17    issues, both the prisoner deposition and the plaintiff's

18    deposition, are there other paper discovery issues for us to

19    deal with, Mr. Ruberry?

20          MR. RUBERRY:  Not, Your Honor, not from the

21    plaintiff's perspective, Your Honor.

22          THE COURT:  Okay, from the defendants?  Have you

23    received your responses that you needed to all your discovery?

24    Anything outstanding?  Anyone on the defense?

25          Just a no will suffice, for the record.

1        MR. PAPA:  No, Your Honor.

2        THE COURT:  Okay, thank you, all right.  So the other

3    pending motions that we have, I think we'll take the easy one.

4    Choice Hotel's motion for leave to depose prisoner.  And it

5    looks like counsel are in agreement on this; we'll have it

6    videotaped.  Is there anything else I need to know on this

7    motion?  I'm inclined to grant it.

8        MR. PAPA:  Your Honor, if I could have a copy of your

9    order because I have to fax it to the prison tomorrow morning

10   to complete the paperwork that they require.

11       THE COURT:  It'll be docketed.  And we'll ensure that

12   that order gets docketed today before we leave here.

13       MR. PAPA:  Thank you.

14       THE COURT:  I don't know that it'll be before normal

15   people call close of business, but it will be before I leave

16   the building tonight.

17       MR. PAPA:  Thank you, Your Honor.

18       MR. RUBERRY:  Your Honor, we did ask that counsel,

19   Mr. Papa, provide us with the name of who he is communication

20   with so we can speak to the people at the correction facility;

21   talk about the videographer and other things.  So I'm sure

22   that by the close of business hours today, before today if Mr.

23   Papa could provide that to me, we'd appreciate it.

24       THE COURT:  If there is such a person, that's great,

25   but it's not always my experience that there is an individual

1    contact person.  But --

2           MR. PAPA:  There is an attorney, Your Honor, and I'd

3    be pleased to give --

4           THE COURT:  Okay.

5           MR. PAPA:  -- counsel the name.  Counsel wants to

6    videotape this deposition.  I've arranged for a videographer

7    at his expense.  Everything is in order, and I will give him

8    the name as soon as -- I think I can give it to him as soon as

9    we finish this hearing, Your Honor.

10          THE COURT:  Okay, so we'll make sure the order

11   indicates that a videographer will be present and that the

12   facility needs to accommodate that.

13          MR. PAPA:  The warden specifically needs that --

14          THE COURT:  Right.

15          MR. PAPA:  -- in the order, Your Honor.

16          THE COURT:  Right; right, okay.  We'll make sure that

17   happens.  So 51 will be granted with a specific order to enter

18   not just a docket entry, we'll do an order that can be sent

19   to, where is he, MacDougall Yeah, to MacDougall.

20          All right, as to -- again, I'm saving the plaintiff's

21   deposition issue for last, but is there anything else in the

22   joint status report or other issues that I need to address,

23   other than the protective order issues?  I didn't see anything

24   else, but I want to make sure I don't miss anything before we

25   delve into that, it's a little more complicated.

1          MR. RUBERRY:  Your Honor, if I would, just by way of

2     explanation.

3          THE COURT:  Sure.

4          MR. RUBERRY:  That as, Your Honor, is aware the

5     original discovery deadline was the 15th of December.  It was

6     extended by this Court to the 22nd.  Ms. Casey informed me

7     that for good cause, I think her daughter's in the Nutcracker

8     or something -- but in any event that they'd just like to

9     produce that witness outside of discovery, we said fine.  So

10    we put in the order for January 15th.  Ms. Casey has

11    represented to me that --

12         MS. CASEY:  Your Honor, they had depositions

13    scheduled in Connecticut for the morning, and they were to do

14    my client down in Maryland that afternoon on December 22nd, so

15    it was just kind of tight.  Discovery -- well, we've also had

16    some conversations with counsel about possibly letting Choice

17    out of the case, that you're looking for certain information.

18    So that's just another issue that we're working on.

19         MR. RUBERRY:  If I --

20         THE COURT:  So we'd move the depositions deadline to

21    January 15th?

22         MR. RUBERRY: For one witness, Your Honor.

23         THE COURT:  Okay.  And who is that, so I can be clear

24    in the order?

25         MS. CASEY:  It's a --

1          MR. RUBERRY:  It's the Choice 30(b)(6).

2          THE COURT:  30(b)(6)?  Okay.

3          MS. CASEY:  It's a Choice 30(b)(6), but I'm not sure

4    which one it is.

5          THE COURT:  Okay, but it'd be the 30(b)(6)

6    representative for Choice.  Okay.

7          MR. RUBERRY:  If I could?

8          THE COURT:  Sure.

9          MR. RUBERRY:  To follow on Ms. Casey's last comment;

10   at the end of this, Your Honor said that I believe that she

11   would be willing to meet ex-parte with anyone to discuss

12   settlement.

13         THE COURT:  Yup.

14         MR. RUBERRY:  Didn't say what time, but we flew out

15   from Chicago, and if we gave a few minutes at the end, I think

16   that we could be in a position to work a few things out,

17   Judge, with the Court's guidance.

18         THE COURT:  Absolutely, as long as you let me take

19   off my robe and out on my sneakers, I'll stay as long as you

20   want.

21         MS. CASEY:  If you brought snacks for her, from

22   Chicago.

23         THE COURT:  That's right.  No, no, if they're hungry

24   you're more likely to buckle.

25         MS. CASEY:  I have some M&M's in my bag for you.

```
 1              THE COURT:  All right.

 2              MR. RUBERRY:  I have pretzels.

 3              THE COURT:  Yes, I think that's a good idea; and we

 4   will do that when we are done -- well, when we're recessed

 5   from the formal proceeding.

 6              All right, in terms of the plaintiff's depo, I think

 7   sort of to segue on the timing issue, the two dates that were

 8   suggested, one is a Sunday.  My thought was to have thought

 9   about the proposal to have somebody actually sit in.  I

10   haven't, in this case, seen a reason -- something that leads

11   me to believe or to have a particularized concern, that

12   defense counsel will be inappropriate in the questioning.  And

13   I'm reluctant to put a proctor in the room, because I fear

14   that it leads to the immediate reaction of what are -- you

15   know, intervene, intervene, intervene; when, if the person's

16   not immediately in the room, things that are really sort of

17   minor will be glossed over and simply be managed by the

18   parties.

19              So my thought had been, well maybe I'll just have you

20   do the deposition here in the courthouse where I'm available

21   to you.  The problem is I'm not -- I am normally often

22   available on Sundays; I'm not available on December 20th.

23              MR. RUBERRY:  We are also free the 21st, Your Honor,

24   and I --

25              THE COURT:  Okay, the 21st I could do it.
```

1          MR. RUBERRY:  The 21st is fine.  And I think I may

2   work things out with you, so before --

3          MR. PAPA:  Your Honor, I believe I was the problem

4   for the 17th; and my case on the 17th has settled --

5          THE COURT:  Okay.

6          MR. PAPA:   So I can be here on the 17th if that's

7   when plaintiff's going to make his client available.

8          THE COURT:  The 21st is better for me.

9          MR. RUBERRY:  21st would be fine, Your Honor.

10          THE COURT:  Okay.  And that -- does that work for

11   you, Mr. Papa?

12          MR. PAPA:  Yes, Your Honor.  I just wanted to make

13   sure that -- I know eventually you'll get to the three-hour

14   issue?

15          THE COURT:  Yeah.

16          MR. PAPA:  And the only reason I mention it now is,

17   that certainly plaintiff if can't make it -- can only stay for

18   three hours, we ought to do it on a day when we can do it the

19   next day, so that she doesn't --

20          THE COURT:  Okay, well --

21          MR. PAPA:  --have to come back out here.  In other

22   words --

23          THE COURT:  No, I understand what you're saying.

24   That if the compromise or the Court's order were that it would

25   be three hours at a time --

1          MR. PAPA:  Right.

2          THE COURT:  -- then that would make sense.

3          MR. PAPA:  I haven't got a problem with that, Your

4    Honor.

5          THE COURT:  I understand; I understand.  So okay,

6    that's a good thought though, so all right, yeah and I would

7    be available both the 21st and 22nd.  I have other stuff going

8    on, but I'll be here and I can --

9          MR. RUBERRY:  I think --

10         MR. PAPA:  I think there's already scheduled

11   something for the 22nd.

12         THE COURT:  Okay, you have something else the 22nd?

13         MR. RUBERRY:  All the -- pardon --

14         MR. PAPA:  We have the psychiatrists on the 22nd.

15         THE COURT:  Oh, because that's the deadline I set.

16         MR. PAPA:  Only because that was the only day he

17   could come.

18         THE COURT:  Okay.

19         MR. RUBERRY:  There's two responses.

20         THE COURT:  Okay.

21         MR. RUBERRY:   And I'll hit them head on, but I think

22   this issue is going to go away when we go in chambers.

23         THE COURT:  Okay.

24         MR. RUBERRY:  But having said that, here's what we

25   have, Your Honor.

1          THE COURT:  Okay.

2          MR. RUBERRY:  If we could go on the 21st for three

3   hours, I was going to even kind of suggest using Your Honor's

4   jury room, but I'm glad Your Honor came up with that idea.

5          THE COURT:  You didn't want to invite yourself, I

6   understand.

7          MR. RUBERRY:  Yes, even though I'm Irish, we have

8   some manners.  But in any event, we also -- the deposition on

9   the 22nd, Judge, is at three o'clock.

10          THE COURT:  Oh, okay.

11          MR. RUBERRY:  So if we come in, in the morning we can

12   get it done.

13          THE COURT:  Yup, okay.

14          MR. RUBERRY:  Thank you, Your Honor.

15          THE COURT:  So is that, from defense counsel's

16   perspective -- because I am reluctant to limit to three hours

17   completely, the deposition of the plaintiff, because it's the

18   main -- you know.  And I think, given my read of the

19   complaint -- I don't think in this case there will be a lot of

20   factual disputes that arise out of the plaintiff's testimony.

21   So I don't think we're going to run into problems.  It's not

22   like that the question is, was the light red or green, and the

23   claim is that the plaintiff is lying.  I don't think that that

24   kind of thing is on the table here.  So my hope is that we

25   don't have problems.  But from defense counsels' perspective,

1    if we split the -- if we gave more time, if we gave the six or

2    even the full seven hours, but we did it over two days, would

3    there be any objections from the defense side?

4              MR. PAPA:  I think it would fit in that time, Your

5    Honor.  I think Your Honor may be right on the facts, but the

6    damage aspect of this case --

7              THE COURT:  Right.

8              MR. PAPA:  -- this woman has a significant prior

9    psychiatric history which hasn't been disclosed to us yet, but

10   is promised.  When we get those records, then I think we'll be

11   in a better place to tell you how long it's going to take.

12             THE COURT:  Okay.

13             MR. PAPA:  The damage aspects of this deposition are

14   extensive.

15             THE COURT:  Okay, so let's put it down for here in

16   the courthouse.  I have to check -- we will have a good room

17   for you.  I can't promise it's this jury room yet, but we

18   will -- we'll get a room reserved for the afternoon of the

19   21st and the morning of the 22nd?

20             MR. RUBERRY:  Yes, Your Honor.

21             THE COURT:  All right, we'll do that.  And I'll leave

22   it to you all to let me know exactly what times.

23             MR. RUBERRY:  Yes, Your Honor.

24             THE COURT:  But I'd like to set aside three hours on

25   Monday the 21st -- well, I think we should set aside four

1    hours in the event that you need to avail yourselves of my

2    intervention services.

3           MR. RUBERRY:  Yes, Your Honor.

4           THE COURT:  So let's assume that we're going to need

5    to be present for at least four hours on each of those days.

6           MR. RUBERRY:  Yes, Your Honor.

7           THE COURT:  Even though we anticipate the testimony

8    won't take the full four hours; we would anticipate it being

9    three hours of testimony.

10          MR. RUBERRY:  Yes, Your Honor.

11          THE COURT:  Any objection to that from the

12   defendants' perspective?

13          MR. SHEA:  No, Your Honor.

14          MR. PAPA:  No, Your Honor.

15          THE COURT:  All right; thank you.  So I'll leave it

16   to you all to let -- we'll block out a room for the whole two

17   days, and I'll leave it to you all to let us know exactly what

18   times you want to stop and start.

19          All right, in terms of the presence of the

20   psychiatrist, I did a little research on this question.  Do

21   the defendants object to the psychiatrist being present, and

22   if so, which defendants and why?

23          MR. PAPA:  Your Honor, it was posed to the

24   defendants, did we agree?  And I don't agree, Your Honor.

25          THE COURT:  Well I'm reposing it.  I'm reposing as do

1    you object?

2           MR. PAPA:  No need to have the psychiatrist present

3    as far as I know.  As far as I've looked at the medical

4    records provided.  This woman, during the course of --

5           THE COURT:  Well, I'm going to stop you though.  So

6    what is the basis for excluding the psychiatrist if I phrase

7    it that way?

8           Because I looked at the law on sequestering witnesses

9    at deposition stage and it's -- the case law is pretty clear

10   that that's a rare and extraordinary thing to do.  You

11   sequester at trial, but not at depos.

12          MR. PAPA:  It appears in the federal court that you

13   can invite anybody in off the street who happens to be walking

14   by.

15          THE COURT:  It certainly appears that way.

16          MR. PAPA:  So on that basis, Your Honor, I guess if

17   the doctor's in the neighborhood, he could come under the

18   federal law -- under the Federal Rules.  But he said he was

19   only available -- because we wanted -- we gave him several

20   dates, he said he was only available the afternoon.  I guess

21   if he's in the neighborhood --

22          THE COURT:  If he makes himself available I think --

23   I sort of -- in looking at the law on this, I flipped it from

24   should he be allowed, to should he be excluded, because that

25   seemed to be the way the law was arranged on this issue.  And

1    I don't really see any basis for excluding him.  And so, if

2    he's available and he wishes to appear, I assume, Mr. Ruberry,

3    you will carefully caution him about not intervening, not --

4    he is to be seen and not heard.

5              MR. RUBERRY:  Yes, Your Honor.  Only -- yes, Your

6    Honor.

7              MR. PAPA:  Your Honor?

8              THE COURT:  Yes.

9              MR. PAPA:  Can I suggest that not only should he not

10   be heard, but he should not be seen.

11             THE COURT:  Well, then he won't be there.

12             MR. PAPA:  Well not seen by the deponent, Your Honor.

13             THE COURT:  But the whole reason for him to be there

14   is for her to feel a sense of security; that the person

15   she's --

16             MR. PAPA:  Well, she can feel that sense of security

17   with him sitting behind her as well as in front of her.

18             THE COURT:  Oh you mean -- I understand what you

19   mean.  Okay, so I'm not going to order that he sit where she

20   physically can't see him.  If you would like I will ensure

21   that I come into the deposition and ensure that I feel

22   comfortable with the arrangement of the parties before the

23   deposition begins.

24             MR. PAPA:  I'd like that, Your Honor.

25             THE COURT:  I will do that.  And that means that you

```
 1    don't get complete freedom in when you start.  So --
 2              All right.  All right, then we can start -- I have an
 3    11 o'clock, a 12 o'clock, and a 1 o'clock.  So if we can get
 4    started by 10:30 we could do it, or we could start -- if
 5    you're only going to need me for fifteen minutes, I could do
 6    it at 12:30, on Monday.  That I come in and sort of say hi to
 7    everybody and make sure we're all --
 8              MR. RUBERRY:  12:30 would be fine, Judge.
 9              THE COURT:  12:30 work for everybody?
10              MR. PAPA:  Whatever works for the deponent coming
11    from California, Your Honor, works for us.
12              THE COURT:  Okay, so we'll say we'll get started at
13    12:30.  We'll have the room available all day, so you should
14    encourage anybody that needs to be here to set up, court
15    reporter -- is there any -- we'll also need to do an order
16    that they can show the CSOs. All right, so let us -- is there
17    any plan to videotape this deposition?
18              MR. RUBERRY:  No, Your Honor; but if I could raise
19    one thing?
20              THE COURT:  Sure.
21              MR. RUBERRY:  And I think I can work it out with Mr.
22    Turret; and I'm sorry counsel I didn't get your name.
23              THE COURT:  Mr. Shea.
24              MR. SHEA:  Mr. Shea.
25              MR. RUBERRY:  Mr. Shea.  We have a nine o'clock
```

1    deposition in Hartford, if we could move that here, to New

2    Haven.

3              MR. SHEA:  On which date?

4              MR. RUBERRY:  It's the 30(b)(6), then we could

5    just --

6              THE COURT:  On the same day, on the Monday.

7              MR. RUBERRY:  Same day, yeah.

8              MR. SHEA:  Yeah, okay.

9              MR. RUBERRY:  Thank you, Judge.

10             THE COURT:  All right.  So yeah, we'll make the room

11   available starting at 8 o'clock.  It'll be available all day

12   to you, whatever room we choose.

13             MR. RUBERRY:  For both depositions Your Honor?

14             THE COURT:  For both depositions.  You can use the

15   room here, that's fine.  The only reason I need to know about

16   videographer, is because I need to alert the security staff if

17   there's going to be special equipment brought in.  Other

18   than -- a court reporter, they're used to; anything more than

19   that, will almost literally and figuratively set off alarm

20   bells.  So let us know if something more than the standard

21   court reporter equipment is coming.

22             MR. RUBERRY:  As soon as possible, yes, Your Honor.

23             THE COURT:  Okay.

24             MR. PAPA:  Your Honor, for the record, the

25   defendant --

1          THE COURT:  Hang on one second.  Hang on a second.

2          All right, I'm sorry Mr. Papa, I'm trying to just

3   make sure that my calendar is what I think it is on that

4   Monday.

5          MR. PAPA:  I just wanted to state for the record that

6   the defendant Choice has no intention of videotaping the

7   deposition.

8          THE COURT:  Okay.

9          MR. PAPA:  So apparently, there'll be no videotape

10  equipment that has to come into the courthouse.

11         THE COURT:  All right, thank you, Mr. Papa.

12         MR. RUBERRY:  We'll get back to Your Honor if we

13  think that -- we'll get back to Your Honor.

14         THE COURT:  Okay, so we will have a room available.

15  And I understand that you'll have -- that you need a 30(b)(6)

16  deposition in the morning of the 21st; and we'll start the

17  plaintiff's deposition -- we'll be ready for it at 12:30, so

18  that I can come in and address any issues.

19         I will be available all afternoon; I have a

20  settlement conference, but that just means that I'm here and

21  I'm in and out of chambers all day.  And the 22nd we will also

22  hold the day until into the early afternoon.

23         All right, and in terms of that motion.  So in terms

24  of the protective order motion, the specific requests, I do

25  not find it's necessary to have a referee in the room, but the

```
 1    deposition will be conducted here in the courthouse in New

 2    Haven.  The deposition will be limited to three hours of

 3    testimony on each day.  And the psychiatrist is permitted to

 4    attend.  And obvi --

 5               MR. PAPA:  Did Your Honor say three or four hours?

 6               One time you said four and now --

 7               THE COURT:  Well, I said we need to set aside at

 8    least four hours.

 9               MR. PAPA:  Oh. I'm sorry.

10               THE COURT:  With three hours of testimony.

11               MR. PAPA:  Thank you.

12               THE COURT:  If the parties come to me after the sixth

13    hour and request and seventh hour, I'll consider it.  My hope

14    is that we don't come to that point.  But I'm setting it now

15    for six hours, and that's under the rule allowing me to limit

16    the time of depositions when the circumstances suggest that it

17    could cause harm to the deponent.

18               MR. PAPA:  And the start time on the 22nd, if we need

19    those three hours?

20               THE COURT:  Whatever you guys decide, just let us

21    know.

22               MR. PAPA:  Earlier the better, Your Honor, because we

23    have a 3 o'clock --

24               THE COURT:  Yes.

25               MR. PAPA:  We'll have a psychiatrist here sitting, so
```

1   we can just follow right away with the psychiatrist, right.

2         MR. RUBERRY:  I'm sure we can work -- we'll work that

3   out with counsel.

4         THE COURT:  Let us know what you want for the

5   schedule.  We will hold those rooms for all day the 21st and

6   22nd.  And you can conduct whichever depos it's convenient,

7   and helpful, and efficient for you to conduct here in those

8   rooms, as long as they're related to this case.

9         MR. RUBERRY:  Yes, Your Honor.

10         THE COURT:  No spare depos.

11         MR. RUBERRY:  I was going to say and a couple other

12   cases I was going to see if I could save on a hotel room.

13         THE COURT:  That's right.  All right, so I think that

14   resolves document number 56.  We've addressed 51, the leave to

15   depos prisoner.  We've addressed 43 which is -- that's Judge

16   Covello addressed.

17         And document number 57, is granted with the

18   information that we've discussed, all to be addressed and

19   disclosed -- all of the insurance information to be disclosed,

20   forthwith, to the plaintiff; and the parties will file a joint

21   status report one week from today which is the 17th, updating

22   the Court -- well, I'm going to be optimistic -- confirming

23   for the Court that everybody is satisfied with the production

24   on insurance issues.  And we will also move the deposition

25   deadline to January 15th, 2016, solely for the deposition of

1    the Choice Hotel's, 30(b)(6) witness.  Other deadlines in the

2    order will remain in place.

3           So anything else we need to do on the record before

4    we break to move into settlement mode, Mr. Papa?

5           MR. PAPA:  Thank you, no, Your Honor, nothing else.

6           THE COURT:  Mr. Shea?

7           MR. SHEA:  No, Your Honor, nothing else.

8           THE COURT:  Ms. Casey?

9           MS. CASEY:  No, Your Honor.

10           THE COURT:  Mr. Ruberry, et al.?

11           MR. RUBERRY:  Yes, Your Honor, just we just have to

12    tinker a little bit with the discovery deadlines.

13           THE COURT:  Okay.

14           MR. RUBERRY:  But we only have to do it if we don't

15    settle with Choice.  So I don't think we have to do it.  In

16    our request, Your Honor, we said that --

17           THE COURT:  That --

18           MR. RUBERRY:  -- that we'd extend it to February 7th,

19    but if we reach an agreement with Choice than we don't need

20    the extension.

21           THE COURT:  Oh, I see, right; in the status report.

22           MR. RUBERRY:  Yes, Your Honor.

23           THE COURT:  Okay, so let's see how we can do today

24    and the -- is that requested extension consented to by both

25    parties?

1              MS. CASEY:  Yes, Your Honor.

2              MR. PAPA:  Yes, Your Honor.

3              THE COURT:  All right, so what we'll do is I'll take

4    that piece of the joint status -- I'll docket that as an oral

5    motion to extend the discovery deadlines as set forth in

6    document number 52, under the header extension of scheduling

7    order deadlines, because it wasn't docketed as a motion.  So

8    we'll docket it as an oral motion that I'll take under

9    advisement and I'll act on after we talk, off the record.

10             MR. RUBERRY:  Yes, Your Honor.

11             THE COURT:  Okay, all right; in that case we'll stand

12   in recess.

13             MR. RUBERRY:  Thank you, Judge.

14             THE CLERK:  All rise, the honorable United States

15   District Court is now in recess.

16             (Whereupon the above matter was adjourned at 4:27

17   o'clock, p.m.)

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T I O N

2     I, Jessica Simckes, Official Court Transcriber for the United

3     States District Court for the District of Connecticut, do

4     hereby certify that the foregoing pages are a true and

5     accurate transcription of the proceedings in the

6     aforementioned matter to the best of my skill and ability.

7

8

9     Date:   February 9, 2016

10

11

12

13                          *Jessica Simckes*

14     _____

15                          Jessica Simckes
                             eScribers, LLC
16                  700 West 192nd Street, Ste. #607
                             New York, NY 10040
17                          (973)406-2250
                      operations@escribers.net

18

19

20

21

22

23

24

25

JANE DOE v.
HICKS, et al.

No. 3:15-cv-01123-AVC
December 10, 2015

## A

**above (1)**
41:16
**absolutely (2)**
12:15;26:18
**accept (1)**
13:12
**acceptance (1)**
15:15
**accepted (1)**
15:16
**accidents (1)**
8:14
**accommodate (1)**
24:12
**act (1)**
41:9
**acted (2)**
6:18,19
**actually (1)**
27:9
**addition (1)**
20:6
**additional (2)**
11:7;13:14
**address (5)**
6:12;12:12,12;24:22;
37:18
**addressed (4)**
39:14,15,16,18
**addresses (1)**
14:16
**adjourned (1)**
41:16
**adjustor (3)**
10:18;11:17,18
**admit (1)**
6:23
**admitted (1)**
5:19
**advisement (2)**
21:8;41:9
**affirmation (2)**
11:3,16
**afternoon (7)**
4:11,13;25:14;31:18;
33:20;37:19,22
**again (7)**
5:3;15:21;17:24;
19:24;20:19;22:10;
24:20
**agree (2)**
32:24,24
**agreement (2)**
23:5;40:19
**Ahmuty (1)**
5:7
**Aiki (2)**
5:8,10
**al (2)**
4:6;40:10

**alarm (1)**
36:19
**alert (1)**
36:16
**Alex (1)**
4:12
**Allianz (6)**
8:4,4;9:10;16:12,12;
17:6
**allowed (1)**
33:24
**allowing (1)**
38:15
**almost (1)**
36:19
**always (1)**
23:25
**Andrew (1)**
4:25
**Angel (1)**
4:22
**anticipate (2)**
32:7,8
**apparently (2)**
5:13;37:9
**appear (1)**
34:2
**appearance (4)**
4:23,24;5:1,9
**appearances (1)**
4:8
**appears (2)**
33:12,15
**appreciate (1)**
23:23
**arise (1)**
30:20
**arranged (2)**
24:6;33:25
**arrangement (1)**
34:22
**aside (4)**
9:3;31:24,25;38:7
**aspect (1)**
31:6
**aspects (1)**
31:13
**assigned (1)**
4:7
**assume (2)**
32:4;34:2
**attend (1)**
38:4
**Attorney (3)**
18:16;19:21;24:2
**automatically (1)**
6:24
**avail (1)**
32:1
**available (16)**
14:3;15:19;27:20,22,
22;28:7;29:7;33:19,20,
22;34:2;35:13;36:11,

11;37:14,19
**aware (2)**
11:25;25:4
**away (3)**
7:19;29:22;39:1

## B

**back (7)**
6:13;10:2,24;19:5;
28:21;37:12,13
**bag (1)**
26:25
**base (1)**
5:23
**basis (3)**
33:6,16;34:1
**begins (1)**
34:23
**behalf (3)**
4:9,12,14
**behind (1)**
34:17
**bells (1)**
36:20
**benefit (1)**
12:17
**better (3)**
28:8;31:11;38:22
**bit (1)**
40:12
**block (1)**
32:16
**both (7)**
9:14;12:4;22:17;
29:7;36:13,14;40:24
**break (1)**
40:4
**Bree (1)**
5:23
**brief (1)**
7:14
**brought (2)**
26:21;36:17
**buckle (1)**
26:24
**building (1)**
23:16
**business (2)**
23:15,22

## C

**calendar (1)**
37:3
**California (1)**
35:11
**call (1)**
23:15
**called (1)**
8:9
**came (2)**
6:21;30:4

**can (36)**
4:5,25;7:18;11:1;
13:9,15;14:15,16;
15:18;16:4,6;17:9;
20:2;21:4;23:20;24:8,
18;25:23;28:6,17,18;
29:8;30:11;33:13;34:9,
16;35:2,3,16,21;36:14;
37:18;39:1,2,6;40:23
**care (2)**
16:7;17:10
**carefully (1)**
34:3
**carrier (4)**
8:20;12:5;14:15;
15:12
**case (17)**
4:7;6:11,12,14,17,
18;11:4;12:10;14:8;
25:17;27:10;28:4;
30:19;31:6;33:9;39:8;
41:11
**cases (2)**
8:9;39:12
**CASEY (44)**
5:6,6,10,12,14,17,19,
22,25;6:4,8,10;7:4;
8:19;9:2,5,11,17,20,22,
24;10:14,18,24;11:5,
14,17,20;14:14,20,22;
15:9,14;17:3;25:6,10,
12,25;26:3,21,25;40:8,
9;41:1
**Casey's (1)**
26:9
**cause (2)**
25:7;38:17
**caution (1)**
34:3
**Central (1)**
19:18
**certain (3)**
10:20;13:14;25:17
**certainly (2)**
28:17;33:15
**chambers (4)**
6:17,22;29:22;37:21
**changed (1)**
18:6
**check (2)**
8:21;31:16
**Chicago (2)**
26:15,22
**Choice (22)**
4:19;5:6;7:2;10:6;
12:11,14;13:1,3,8;
17:11,12,13,14;23:4;
25:16;26:1,3,6;37:6;
40:1,15,19
**choose (1)**
36:12
**circumstances (1)**
38:16

**claim (3)**
13:25;14:2;30:23
**claims (2)**
14:6,11
**clarification (4)**
10:1,2,20;14:25
**clarify (1)**
10:19
**clear (3)**
12:8;25:23;33:9
**CLERK (2)**
4:2;41:14
**client (2)**
25:14;28:7
**clients (1)**
12:13
**close (2)**
23:15,22
**co-counsel (1)**
20:17
**comfortable (1)**
34:22
**coming (2)**
35:10;36:21
**comment (1)**
26:9
**communicate (1)**
19:10
**communicating (1)**
6:16
**communication (1)**
23:19
**commuting (1)**
6:3
**compel (3)**
16:23;17:23;18:12
**complaint (1)**
30:19
**complete (4)**
16:23;19:25;23:10;
35:1
**completely (1)**
30:17
**complicated (2)**
13:15;24:25
**comply (1)**
20:17
**compromise (1)**
28:24
**concern (2)**
14:11;27:11
**concerned (1)**
20:7
**conduct (2)**
39:6,7
**conducted (1)**
38:1
**conference (1)**
37:20
**confirmation (1)**
20:8
**confirming (1)**
39:22

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

**Connecticut (2)**
5:20;25:13
**consented (1)**
40:24
**consider (1)**
38:13
**contact (1)**
24:1
**contends (1)**
16:23
**continuances (1)**
6:23
**continue (1)**
6:18
**convenient (1)**
39:6
**conversations (2)**
13:9;25:16
**convey (1)**
11:1
**conveying (1)**
15:3
**copy (5)**
12:25;14:21;16:6;
18:17;23:8
**corrected (1)**
12:16
**correction (1)**
23:20
**correspondence (1)**
16:11
**costs (1)**
21:22
**counsel (37)**
4:8;5:7;7:8;8:18,21;
9:7,9,15;10:19;11:6;
12:3,5,5,7,10,19;13:3,
8,10;16:5,13,15;17:7,
25;18:8,17;20:15,20;
21:1;23:5,18;24:5,5;
25:16;27:12;35:22;
39:3
**counsels' (1)**
30:25
**counsel's (2)**
14:16;30:15
**couple (1)**
39:11
**course (1)**
33:4
**Court (195)**
4:3,5,11,13,15,20,23;
5:2,5,8,11,13,15,18,21,
23;6:6,9,11;7:5,7,10,
13,17,21,23;8:7,11,18,
25;9:14,19,21,23;10:8,
13,15,23,25;11:13,15,
19,21;12:7,10,17,20,
22;13:1,3,6,19,24;14:7,
10,18,21,23;15:6,13,
18,25;16:3,19,22;17:1,
5,11,17,19,22;18:3,6,8,
11,15,18,21,23;19:3,5,

8,10,13,16,23;20:6,12,
15,19;21:7,10,14,16,
21,25;22:4,7,10,13,15,
22;23:2,11,14,24;24:4,
10,14,16;25:3,6,20,23;
26:2,5,8,13,18,23;27:1,
3,25;28:5,8,10,15,20,
23;29:2,5,12,15,18,20,
23;30:1,5,10,13,15;
31:7,12,15,21,24;32:4,
7,11,15,25;33:5,12,15,
22;34:8,11,13,18,25;
35:9,12,14,20,23;36:6,
10,14,18,21,23;37:1,8,
11,14;38:7,10,12,20,
24;39:4,10,13,22,23;
40:6,8,10,13,17,21,23;
41:3,11,15
**courthouse (4)**
27:20;31:16;37:10;
38:1
**Court's (2)**
26:17;28:24
**Covello (2)**
4:7;39:16
**Covello's (3)**
6:17,21;7:3
**coverage (1)**
7:18
**covered (1)**
14:1
**covering (1)**
4:25
**CSOs (1)**
35:16
**current (1)**
14:2
**currently (1)**
13:25
**custom (1)**
12:6
**customary (1)**
14:5
**cut (1)**
16:4

**D**

**damage (2)**
31:6,13
**date (1)**
36:3
**dates (2)**
27:7;33:20
**daughter's (1)**
25:7
**day (12)**
21:4;28:18,19;29:16;
35:13;36:6,7,11;37:21,
22;38:3;39:5
**days (4)**
21:3;31:2;32:5,17
**deadline (4)**

8,10,13,16,23;20:6,12,
15,19;21:7,10,14,16,
21,25;22:4,7,10,13,15,
22;23:2,11,14,24;24:4,
10,14,16;25:3,6,20,23;
25:5,20;29:15;39:25
**deadlines (5)**
20:23;40:1,12;41:5,7
**deal (2)**
14:16;22:19
**December (5)**
20:24,25;25:5,14;
27:22
**decide (2)**
15:3;38:20
**decrease (1)**
8:15
**defendant (4)**
4:19;18:12;36:25;
37:6
**defendants (5)**
4:16;22:22;32:21,22,
24
**defendants' (1)**
32:12
**defending (1)**
10:6
**defense (5)**
22:24;27:12;30:15,
25;31:3
**deficient (2)**
7:9,13
**delve (1)**
24:25
**Demers (1)**
5:7
**depo (1)**
27:6
**deponent (3)**
34:12;35:10;38:17
**depos (4)**
33:11;39:6,10,15
**depose (1)**
23:4
**deposition (21)**
22:16,17,18;24:6,21;
27:20;30:8,17;31:13;
33:9;34:21,23;35:17;
36:1;37:7,16,17;38:1,
2;39:24,25
**depositions (5)**
25:12,20;36:13,14;
38:16
**determination (1)**
7:25
**different (1)**
13:22
**digit (1)**
6:9
**diminished (3)**
13:12;16:17,18
**direct (1)**
6:21
**directions (1)**
12:4
**directly (1)**
10:16
**disclosed (6)**

15:22,23;18:15;31:9;
39:19,19
**disclosures (2)**
12:2;20:22
**discovery (9)**
6:13;7:2;22:18,23;
25:5,9,15;40:12;41:5
**discuss (1)**
26:11
**discussed (1)**
39:18
**disputes (1)**
30:20
**District (2)**
4:2;41:15
**docket (2)**
6:19;24:18;41:4,8
**docketed (4)**
6:20;23:11,12;41:7
**doctor's (1)**
33:17
**document (10)**
6:19;7:11;17:23;
18:4,11,25;21:7;39:14,
17;41:6
**documentation (1)**
11:15
**documents (1)**
16:12
**Doe (2)**
4:6,10
**dollar (1)**
16:10
**dollars (3)**
11:14;13:11;21:20
**done (3)**
17:13;27:4;30:12
**down (3)**
21:20;25:14;31:15
**due (3)**
7:3,8;9:8
**during (1)**
33:4

**E**

**Earlier (1)**
38:22
**early (1)**
37:22
**easy (1)**
23:3
**Ed (1)**
6:1
**Edward (1)**
4:9
**efficient (1)**
39:7
**eight (1)**
13:22
**either (5)**
11:2;12:10;16:14,15;
17:9

**else (7)**
23:6;24:21,24;29:12;
40:3,5,7
**e-mail (8)**
10:20,21;11:17;
12:12;14:15;15:3,6;
19:19
**e-mailed (2)**
9:4;10:18
**employment (1)**
5:16
**encourage (1)**
35:14
**end (2)**
26:10,15
**endorsements (7)**
7:16,19;9:1,4,9,12,13
**enjoying (1)**
5:15
**ensure (3)**
23:11;34:20,21
**enter (2)**
10:25;24:17
**entities (2)**
13:22;14:1
**entry (1)**
24:18
**equipment (3)**
36:17,21;37:10
**et (2)**
4:6;40:10
**even (7)**
8:2,4;21:12;30:3,7;
31:2;32:7
**event (4)**
6:25;25:8;30:8;32:1
**eventually (1)**
28:13
**everybody (3)**
35:7,9;39:23
**exactly (2)**
31:22;32:17
**excess (9)**
8:13,20,22;9:6;
11:18;12:5;13:11;
14:15;15:11
**exchange (1)**
14:19
**exchanged (1)**
15:17
**excluded (1)**
33:24
**excluding (2)**
33:6;34:1
**Excuse (1)**
17:20
**exercised (1)**
11:4
**exists (1)**
20:16
**ex-parte (1)**
26:11
**expense (1)**

24:7
**experience (1)**
23:25
**explain (1)**
19:2
**explanation (1)**
25:2
**express (1)**
15:21
**extend (2)**
40:18;41:5
**extended (2)**
7:3;25:6
**extension (4)**
6:20;40:20,24;41:6
**extensive (1)**
31:14
**extent (1)**
11:12
**extraordinary (1)**
33:10

**F**

**faces (1)**
4:15
**facility (2)**
23:20;24:12
**fact (2)**
11:16;15:10
**facts (1)**
31:5
**factual (1)**
30:20
**far (3)**
8:13;33:3,3
**fax (1)**
23:9
**fear (1)**
27:13
**February (1)**
40:18
**Federal (4)**
11:25;33:12,18,18
**feel (3)**
34:14,16,21
**fees (1)**
21:21
**few (2)**
26:15,16
**fifteen (1)**
35:5
**figuratively (1)**
36:19
**figure (2)**
18:25;20:3
**file (4)**
13:16;21:1,4;39:20
**filed (1)**
17:3
**find (1)**
37:25
**fine (7)**

14:4;17:8;25:9;28:1,
9;35:8;36:15
**finish (1)**
24:9
**fire (1)**
14:8
**Fireman (1)**
16:11
**Fireman's (2)**
8:3;16:13
**firm (1)**
18:1
**firms (1)**
12:12
**first (3)**
6:23;7:1;20:21
**Fist (1)**
18:23
**fit (1)**
31:4
**Fitzgerald (1)**
4:18
**five (1)**
21:3
**flew (1)**
26:14
**flipped (1)**
33:23
**follow (4)**
8:4;10:10;26:9;39:1
**followed (1)**
10:11
**form (3)**
8:4;10:10;14:25
**formal (1)**
27:5
**forth (1)**
41:5
**forthwith (2)**
20:25;39:20
**forward (1)**
13:18
**forwarded (1)**
11:20
**four (6)**
31:25;32:5,8;38:5,6,
8
**free (1)**
27:23
**freedom (1)**
35:1
**front (1)**
34:17
**full (4)**
11:12;19:25;31:2;
32:8
**fully (1)**
10:6
**Fund (3)**
8:3;16:11,13
**further (1)**
10:1

**G**

**gave (5)**
20:17;26:15;31:1,1;
33:19
**generally (1)**
21:16
**gets (1)**
23:12
**given (1)**
30:18
**glad (1)**
30:4
**glossed (1)**
27:17
**Good (6)**
4:11,13;25:7;27:3;
29:6;31:16
**grand (1)**
21:23
**grant (1)**
23:7
**granted (2)**
24:17;39:17
**granting (2)**
6:20,23
**great (1)**
23:24
**green (1)**
30:22
**guess (5)**
7:1;11:21;21:3;
33:16,20
**guidance (1)**
26:17
**guys (1)**
38:20

**H**

**hand (2)**
6:16,16
**hands (1)**
20:1
**hang (3)**
18:21;37:1,1
**happened (1)**
6:24
**happens (2)**
24:17;33:13
**harm (1)**
38:17
**Hartford (1)**
36:1
**Haven (2)**
36:2;38:2
**head (1)**
29:21
**header (1)**
41:6
**heard (4)**
5:11;13:13;34:4,10

**hearing (1)**
24:9
**help (1)**
17:24
**helpful (1)**
39:7
**here's (1)**
29:24
**Hess (1)**
4:12,12
**hi (1)**
35:6
**Hicks (5)**
4:6,22;12:11,13;
20:10
**himself (1)**
33:22
**history (1)**
31:9
**hit (1)**
29:21
**hold (2)**
37:22;39:5
**Honor (94)**
4:17;5:1,20;6:4;7:4,
6,12,15;8:10,12,19;
9:22;11:5;12:15;14:5,
13,14;15:5,9;16:2,25;
17:10;18:5,7;19:2,7,9,
19;20:5,11,17;21:6,9;
22:2,9,12,20,21;23:1,8,
17,18;24:2,9,15;25:1,4,
12,22;26:10;27:23;
28:3,9,12;29:4,25;30:4,
14;31:5,5,20,23;32:3,6,
10,13,14,23,24;33:16;
34:5,6,7,12,24;35:11,
18;36:13,22,24;37:12,
13;38:5,22;39:9;40:5,
7,9,11,16,22;41:1,2,10
**honorable (3)**
4:2,3;41:14
**Honor's (2)**
11:25;30:3
**hope (3)**
5:15;30:24;38:13
**hotel (2)**
8:14;39:12
**Hotel's (2)**
23:4;40:1
**hour (2)**
38:13,13
**hours (17)**
23:22;28:18,25;30:3,
16;31:2,24;32:1,5,8,9;
38:2,5,8,10,15,19
**house (1)**
16:15
**Howard (1)**
4:18
**hundred (1)**
14:9
**hungry (1)**

26:23

**I**

**idea (2)**
27:3;30:4
**immediate (1)**
27:14
**immediately (1)**
27:16
**impaired (3)**
14:6;21:12,19
**inappropriate (1)**
27:12
**Inc (1)**
4:22
**inclined (1)**
23:7
**Incomplete (2)**
7:21,22
**indemnifying (1)**
10:6
**indicates (1)**
24:11
**individual (1)**
23:25
**information (15)**
8:20;11:7;12:1;
14:19;15:4;16:20;
20:13,14,15;21:17,18;
22:1;25:17;39:18,19
**informed (1)**
25:6
**instance (1)**
13:21
**instead (1)**
13:16
**insurance (3)**
7:16;13:15;39:19,24
**insured (3)**
11:11,11;13:21
**insureds (2)**
11:10;13:14
**intention (1)**
37:6
**interrogatories (1)**
11:24
**interrogatory (1)**
11:23
**intervene (3)**
27:15,15,15
**intervening (1)**
34:3
**intervention (1)**
32:2
**into (6)**
24:25;30:21;34:21;
37:10,22;40:4
**invite (2)**
30:5;33:13
**Irish (1)**
30:7
**issue (12)**

14:12,24;15:7;16:1,
7;22:13;24:21;25:18;
27:7;28:14;29:22;
33:25
**issued (5)**
8:1,2;9:25;16:5;18:2
**issues (11)**
11:6;13:7,8;14:17;
16:2;22:17,18;24:22,
23;37:18;39:24

## J

**Jane (1)**
4:10
**January (3)**
25:10,21;39:25
**Jennifer (1)**
5:6
**John (1)**
4:17
**joint (4)**
21:4;24:22;39:20;
41:4
**Judge (12)**
4:7;6:16,21;7:3;8:9;
15:24;26:17;30:9;35:8;
36:9;39:15;41:13
**jury (2)**
30:4;31:17

## K

**keep (1)**
17:20
**kind (4)**
16:4;25:15;30:3,24
**knowing (1)**
13:20
**knows (1)**
8:12
**Kohn (1)**
4:18

## L

**lack (1)**
8:25
**last (3)**
8:20;24:21;26:9
**late (1)**
8:20
**Law (7)**
5:8,10;33:8,9,18,23,
25
**leads (2)**
27:10,14
**least (4)**
11:16;21:3;32:5;
38:8
**leave (8)**
15:2;23:4,12,15;
31:21;32:15,17;39:14

**left (1)**
6:16
**letter (6)**
8:16;11:16;12:24;
15:14,15;18:2
**letters (1)**
9:25;11:2;18:20
**letter's (1)**
8:1
**letting (3)**
21:2,5;25:16
**Liberty (24)**
8:2,5;9:6,7;10:1,2,3,
10,11,16;11:1;12:5,7,
19,24;15:10;16:5,10,
14,14;17:16,17,20;
21:11
**Libertymutualcom (1)**
12:13
**Liberty's (1)**
12:4
**light (1)**
30:22
**likely (1)**
26:24
**limit (2)**
30:16;38:15
**limited (1)**
38:2
**literally (1)**
36:19
**little (3)**
24:25;32:20;40:12
**long (5)**
16:7;26:18,19;31:11;
39:8
**looked (2)**
33:3,8
**looking (3)**
21:18;25:17;33:23
**looks (1)**
23:5
**losses (1)**
11:9
**lot (1)**
30:19
**lying (1)**
30:23

## M

**M&M's (1)**
26:25
**MacDougall (2)**
24:19,19
**mailed (1)**
20:21
**main (1)**
30:18
**makes (1)**
33:22
**managed (1)**
27:17

**management (2)**
6:12,18
**manners (1)**
30:8
**mark (1)**
13:13
**Maryland (1)**
25:14
**matter (3)**
4:6;21:2;41:16
**may (8)**
7:6;8:19;9:22;12:3,
11,11;28:1;31:5
**maybe (3)**
5:23;6:8;27:19
**McManus (1)**
5:7
**mean (5)**
11:8;20:1,20;34:18,
19
**means (3)**
20:2;34:25;37:20
**medical (1)**
33:3
**Meehan (1)**
4:21
**meet (1)**
26:11
**mention (1)**
28:16
**merely (1)**
15:9
**Merriam (1)**
4:3
**million (4)**
11:14;13:11;14:9;
21:20
**minor (1)**
27:17
**minutes (2)**
26:15;35:5
**miss (1)**
24:24
**missing (3)**
14:25;16:1;20:4
**mode (1)**
40:4
**Monday (5)**
22:8;31:25;35:6;
36:6;37:4
**money (2)**
13:18,20
**money's (1)**
14:5
**more (6)**
21:9;24:25;26:24;
31:1;36:18,20
**morning (7)**
10:18;19:15;23:9;
25:13;30:11;31:19;
37:16
**motel (1)**
8:15

**motion (14)**
6:18,20;16:22;17:3,
10,22;18:12;23:4,7;
37:23,24;41:5,7,8
**motions (4)**
6:13;7:1;18:24;23:3
**move (5)**
22:16;25:20;36:1;
39:24;40:4
**moved (1)**
17:11
**much (7)**
12:17;13:18,20;
16:17;17:9;21:11,15
**myself (1)**
4:25

## N

**name (7)**
4:17;5:3;6:7;23:19;
24:5,8;35:22
**names (5)**
4:15;11:11;13:14,16,
19
**necessary (2)**
13:19;37:25
**need (17)**
13:10;14:21;21:3;
23:6;24:22;32:1,4;
33:2;35:5,15;36:15,16;
37:15;38:7,18;40:3,19
**needed (1)**
22:23
**needs (7)**
11:8;15:22,22;19:25;
24:12,13;35:14
**neighborhood (2)**
33:17,21
**new (4)**
5:17,19;36:1;38:1
**next (1)**
28:19
**night (1)**
8:20
**nine (1)**
35:25
**none (3)**
10:14;14:14;15:12
**normal (1)**
23:14
**normally (1)**
27:21
**note (1)**
6:15
**November (2)**
20:23,24
**number (14)**
4:7;6:9,19,21;17:7,7,
23;18:4,11;19:1;21:7;
39:14,17;41:6
**Nutcracker (1)**
25:7

## O

**object (2)**
32:21;33:1
**objection (5)**
21:16,25;22:7,8;
32:11
**objections (1)**
31:3
**obvi (1)**
38:4
**O'CLOCK (9)**
4:1;30:9;35:3,3,3,25;
36:11;38:23;41:17
**odd (1)**
5:22
**off (6)**
6:9;13:13;26:19;
33:13;36:19;41:9
**often (1)**
27:21
**one (15)**
6:1,9,19;16:4;17:7;
20:20;21:9;23:3;25:22;
26:4;27:8;35:19;37:1;
38:6;39:21
**one-million- (1)**
16:9
**only (11)**
28:16,17;29:16,16;
33:19,20;34:5,9;35:5;
36:15;40:14
**open (1)**
4:3
**opponent (1)**
16:16
**optimistic (1)**
39:22
**oral (2)**
41:4,8
**order (22)**
6:14;7:3,24;10:25;
13:17;22:16;23:9,12;
24:7,10,15,17,18,23;
25:10,24;28:24;34:19;
35:15;37:24;40:2;41:7
**original (2)**
20:23;25:5
**ought (1)**
28:18
**out (16)**
15:1;18:25;19:24;
20:3;21:21;25:17;
26:14,16,19;28:2,21;
30:20;32:16;35:21;
37:21;39:3
**outside (1)**
25:9
**outstanding (1)**
22:24
**over (6)**
8:2;12:1;16:24;17:4;

27:17;31:2

## P

**PACER (1)**
13:22
**paid (6)**
12:11;14:6,11;16:14,
16;21:21
**Papa (52)**
4:17;17:16;16;23:1,
8,13,17,19,23;24:2,5,
13,15;28:3,6,11,12,16,
21;29:1,3,10,14,16;
31:4,8,13;32:14,23;
33:2,12,16;34:7,9,12,
16,24;35:10;36:24;
37:2,5,9,11;38:5,9,11,
18,22,25;40:4,5;41:2
**paper (1)**
22:18
**papers (1)**
8:3
**paperwork (1)**
23:10
**pardon (1)**
29:13
**particularized (1)**
27:11
**parties (5)**
27:18;34:22;38:12;
39:20;40:25
**party (1)**
17:17
**paying (1)**
16:15
**pending (5)**
6:12;7:1;14:11;21:8;
23:3
**people (2)**
23:15,20
**permitted (1)**
38:3
**person (3)**
23:24;24:1;34:14
**personal (1)**
5:6
**person's (1)**
27:15
**perspective (4)**
22:21;30:16,25;
32:12
**ph (1)**
5:24
**phrase (1)**
33:6
**physically (1)**
34:20
**piece (1)**
41:4
**place (2)**
31:11;40:2
**plaintiff (7)**

4:10,12,14;28:17;
30:17,23;39:20
**plaintiff's (11)**
7:9;10:19;11:6;
18:11;22:17,21;24:20;
27:6;28:7;30:20;37:17
**plan (1)**
35:17
**please (3)**
4:5,8;19:20
**pleased (1)**
24:3
**PM (2)**
4:1;41:17
**point (1)**
38:14
**points (2)**
10:19;11:23
**policies (2)**
15:22;20:10
**policy (49)**
7:16,19,21;8:9,10,13,
22,23,23;9:3,6,7,10,13,
16;10:7;11:8,9,10,11;
13:11;16:1,9,10,16,23;
17:3,6,9,21;18:10,12,
15,17,23,24,25;19:4,6,
14,20,20,23,25,25;
20:4,6;21:11,20
**pool (1)**
14:3
**posed (1)**
32:23
**position (3)**
7:9,20;26:16
**possible (1)**
36:22
**possibly (1)**
25:16
**practical (1)**
21:2
**practice (1)**
6:22
**presence (1)**
32:19
**present (4)**
24:11;32:5,21;33:2
**presiding (1)**
4:4
**pretty (1)**
33:9
**pretzels (1)**
27:2
**primary (3)**
8:9,23;12:4
**prior (1)**
31:8
**prison (1)**
23:9
**prisoner (3)**
22:17;23:4;39:15
**private (1)**
16:13

**probably (4)**
6:6,22,23;8:14
**problem (4)**
6:16;27:21;28:3;
29:3
**problems (2)**
30:21,25
**proceeding (1)**
27:5
**proctor (1)**
27:13
**produce (1)**
25:9
**production (3)**
11:22;18:12;39:23
**promise (1)**
31:17
**promised (1)**
31:10
**proposal (1)**
27:9
**protective (4)**
13:17;22:16;24:23;
37:24
**provide (2)**
23:19,23
**provided (3)**
11:2,15;33:4
**providing (3)**
20:13;21:17,25
**psychiatric (1)**
31:9
**psychiatrist (7)**
32:20,21;33:2,6;
38:3,25;39:1
**psychiatrists (1)**
29:14
**purchase (1)**
16:13
**purposes (1)**
6:12
**put (3)**
25:10;27:13;31:15
**Putting (1)**
4:15

## R

**raise (1)**
35:18
**raised (1)**
11:6
**rare (1)**
33:10
**reach (1)**
40:19
**reaction (1)**
27:14
**read (1)**
30:18
**ready (1)**
37:17
**real (1)**

13:9
**really (3)**
6:13;27:16;34:1
**reason (4)**
27:10;28:16;34:13;
36:15
**received (4)**
10:2,22;20:8;22:23
**recess (3)**
4:3;41:12,15
**recessed (1)**
27:4
**record (8)**
4:8;6:15;12:18;
22:25;36:24;37:5;40:3;
41:9
**records (2)**
31:10;33:4
**red (1)**
30:22
**redacting (1)**
13:16
**reduce (1)**
14:2
**referee (1)**
37:25
**referred (1)**
6:17
**referring (2)**
8:22,23
**reiterates (1)**
15:10
**related (1)**
39:8
**release (1)**
11:10
**reluctant (2)**
27:13;30:16
**remain (1)**
40:2
**report (7)**
21:2,5,8;22:11;
24:22;39:21;40:21
**reporter (3)**
35:15;36:18,21
**reposing (2)**
32:25,25
**represent (2)**
12:21;17:8
**representation (5)**
8:8;10:9;13:10,24;
15:7
**representative (2)**
22:3;26:6
**representatives (1)**
11:1
**represented (1)**
25:11
**representing (2)**
4:22;12:3
**represents (1)**
18:1
**request (7)**

10:4,15;18:10;21:9;
22:5;38:13;40:16
**requested (2)**
10:1;18:25;40:24
**requesting (1)**
10:21
**requests (2)**
11:22;37:24
**require (1)**
23:10
**research (1)**
32:20
**reservation (19)**
7:25;8:5,6,16;9:24,
25;10:5,11,12;11:4;
12:24;15:7,11,16;16:5;
17:8;18:1,19;20:9
**reservations (1)**
11:2
**reserved (1)**
31:18
**resolved (2)**
17:1;21:5
**resolves (1)**
39:14
**respect (4)**
7:8;9:9,24;11:5
**respond (1)**
8:19
**responded (1)**
19:21
**response (2)**
10:4,24
**responses (3)**
7:2;22:23;29:19
**retained (1)**
12:19
**review (1)**
9:15
**right (53)**
4:5,15;5:8;6:6,11,16;
7:5,10;10:23;11:21;
12:14;13:4;14:9;15:6,
25;16:24;17:5;18:3,21;
19:20;21:14,24;22:4,
15;23:2;24:14,16,16,
20;26:23;27:1,6;29:1,
6;31:5,7,21;32:15,19;
35:2,2,16;36:10;37:2,
11,23;39:1,1,13,13;
40:21;41:3,11
**rights (19)**
8:1,5,6,16;9:25,25;
10:5,12;11:2,4;12:24;
15:7,11,16;16:5;17:8;
18:1,20;20:9
**rise (1)**
41:14
**robe (1)**
26:19
**room (14)**
27:13,16;30:4;31:16,
17,18;32:16;35:13;

36:10,12,15;37:14,25;
39:12
**rooms (2)**
39:5,8
**Rosenbaum (1)**
4:22
**Rubbery (1)**
6:2
**Ruberry (118)**
4:9,9;6:1;7:6,8,11,
15,18,22,24;8:8,12;9:3,
8,12;10:9,17;11:21,24;
12:9,15,19,21,23;13:2,
5,8,21;14:4,8,13,24;
15:5,19,19,24;16:2,4,
20,25;17:2,6,16,18,20,
24,25;18:5,7,19,22,23;
19:2,4,7,13,15,18;20:7,
11;21:9,11,15,19,23;
22:8,12,19,20;23:18;
25:1,4,19,22;26:1,7,9,
14;27:2,23;28:1,9;
29:9,13,19,21,24;30:2,
7,11,14;31:20,23;32:3,
6,10;34:2,5;35:8,18,21,
25;36:4,7,9,13,22;
37:12;39:2,9,11;40:10,
11,14,18,22;41:10,13
**Ruberry's (1)**
22:5
**rule (1)**
38:15
**Rules (2)**
11:25;33:18
**run (2)**
22:3;30:21

**S**

**Sahil (17)**
4:22;12:3,11,13,21;
13:1,2;15:25;16:24,25;
17:18,19,22;18:1,8,13;
20:9
**same (5)**
6:7;17:15;20:16;
36:6,7
**Sarah (1)**
4:3
**satisfactory (1)**
15:2
**satisfied (1)**
39:23
**save (1)**
39:12
**saving (1)**
24:20
**saying (4)**
15:16;17:20;19:19;
28:23
**schedule (1)**
39:5
**scheduled (2)**

25:13;29:10
**scheduling (2)**
6:14;41:6
**seal (1)**
13:16
**seated (1)**
4:6
**Seattle (1)**
5:21;6:3
**second (5)**
8:13;13:13;16:8;
37:1,1
**Secondly (1)**
7:24
**security (3)**
34:14,16;36:16
**seem (1)**
12:23
**seemed (1)**
33:25
**segue (1)**
27:7
**send (4)**
10:4;18:17;20:2,2
**sending (1)**
9:7
**sense (3)**
29:2;34:14,16
**sent (8)**
9:5;10:20,21;12:4;
19:4,6,23;24:18
**separate (1)**
13:6
**sequester (1)**
33:11
**sequestering (1)**
33:8
**served (3)**
7:4,10,11
**services (1)**
32:2
**set (8)**
9:3;29:15;31:24,25;
35:14;36:19;38:7;41:5
**setting (1)**
38:14
**settle (1)**
40:15
**settled (1)**
28:4
**settlement (5)**
16:17;21:12;26:12;
37:20;40:4
**seven (2)**
13:22;31:2
**seventh (1)**
21:4;38:13
**several (1)**
33:19
**share (1)**
14:23
**Shea (32)**
4:21,21,24;5:4,4;

18:10,14,16;19:8,9,12,
17,19;20:5,12,14;21:6,
18,24;22:2,6,9,14;
32:13;35:23,24,24,25;
36:3,8;40:6,7
**show (1)**
35:16
**side (1)**
31:3
**significant (1)**
31:8
**simple (2)**
13:9;17:25
**simply (1)**
27:17
**sit (2)**
27:9;34:19
**sitting (2)**
34:17;38:25
**six (3)**
21:3;31:1;38:15
**sixth (1)**
38:12
**snacks (1)**
26:21
**sneakers (1)**
26:19
**solely (1)**
39:25
**somebody (1)**
27:9
**someone (3)**
5:25;6:6;13:10
**soon (3)**
24:8,8;36:22
**sorry (5)**
5:2;6:4;35:22;37:2;
38:9
**sort (7)**
15:1;20:8;21:16;
27:7,16;33:23;35:6
**spare (1)**
39:10
**speak (1)**
23:20
**speaking (1)**
6:2
**special (1)**
36:17
**specific (3)**
4:24;24:17;37:24
**specifically (1)**
24:13
**split (1)**
31:1
**Sprague (1)**
4:18
**staff (1)**
36:16
**stage (1)**
33:9
**stand (2)**
12:16;41:11

**standard (1)**
36:20
**standing (1)**
6:2
**start (6)**
32:18;35:1,2,4;
37:16;38:18
**started (2)**
35:4,12
**starting (1)**
36:11
**state (1)**
37:5
**statements (1)**
17:14
**States (2)**
4:2;41:14
**status (10)**
7:2;17:23;20:12;
21:2,5;22:11;24:22;
39:21;40:21;41:4
**stay (2)**
26:19;28:17
**Stephen (1)**
4:17
**still (3)**
6:25;17:12,12
**stop (2)**
32:18;33:5
**street (1)**
33:13
**stuff (1)**
29:7
**subject (1)**
20:16
**sued (1)**
13:23
**suffice (1)**
22:25
**sufficient (2)**
15:3,20
**suggest (3)**
30:3;34:9;38:16
**suggested (1)**
27:8
**Sunday (1)**
27:8
**Sundays (1)**
27:22
**sure (18)**
6:13;9:23;13:6,18;
17:14;20:19;23:21;
24:10,16,24;25:3;26:3,
8;28:13;35:7,20;37:3;
39:2

**T**

**table (1)**
30:24
**talk (2)**
23:21;41:9
**talking (4)**

8:25;9:8;13:3;17:2
**talks (2)**
16:17;21:12
**Ten (2)**
11:14;13:11
**tender (2)**
15:15,16
**ten-million-dollar (1)**
16:11
**terms (4)**
27:6;32:19;37:23,23
**testimony (5)**
30:20;32:7,9;38:3,10
**thee (1)**
20:23
**there'll (1)**
37:9
**Third (1)**
8:8
**thoroughly (1)**
9:15
**though (5)**
8:4;29:6;30:7;32:7;
33:5
**thought (5)**
17:13;27:8,8,19;29:6
**Three (13)**
7:15;8:15;28:18,25;
30:2,9,16;31:24;32:9;
38:2,5,10,19
**three-hour (1)**
28:13
**tight (1)**
25:15
**times (2)**
31:22;32:18
**timing (1)**
27:7
**tinker (1)**
40:12
**today (13)**
11:3,20;14:24;15:21;
19:24;20:1,21;22:11;
23:12,22,22;39:21;
40:23
**told (5)**
5:25;6:1,2;10:5;
16:10
**tomorrow (2)**
20:2;23:9
**tonight (1)**
23:16
**touch (1)**
5:23
**track (1)**
6:14
**trial (1)**
33:11
**try (1)**
14:25
**trying (2)**
18:24;37:2
**turned (5)**

8:1;12:1;16:24;17:4;
19:24
**Turret (6)**
4:21,25;18:17;19:11,
21;35:22
**Turret's (1)**
18:1
**two (6)**
16:2;17:7;27:7;
29:19;31:2;32:16

**U**

**umbrella (2)**
14:2;18:12
**Um-hm (1)**
8:11
**under (14)**
5:9;7:3;10:6;13:16,
17;14:1;20:9,9;21:7;
33:17,18;38:15;41:6,8
**understands (1)**
20:20
**United (2)**
4:2;41:14
**up (5)**
6:2;10:11;18:8;30:4;
35:14
**update (1)**
22:10
**updating (1)**
39:21
**use (1)**
36:14
**used (1)**
36:18
**using (1)**
30:3
**Usually (1)**
14:4

**V**

**variety (1)**
7:1
**verbally (1)**
10:5
**videographer (4)**
23:21;24:6,11;36:16
**videotape (3)**
24:6;35:17;37:9
**videotaped (1)**
23:6
**videotaping (1)**
37:6

**W**

**walking (1)**
33:13
**wants (2)**
17:7;24:5
**warden (1)**

24:13
**wasted (1)**
17:9
**wasting (6)**
8:10,17;11:8;15:8;
16:9;21:19
**way (9)**
7:14;9:4;15:3;16:7;
20:3;25:1;33:7,15,25
**week (10)**
11:3;15:21;19:24;
20:1,17,20;21:1,8;
22:11;39:21
**what's (2)**
18:8;20:12
**Where're (1)**
5:18
**Whereupon (1)**
41:16
**whichever (1)**
39:6
**whole (2)**
32:16;34:13
**William (3)**
4:14,21;5:4
**willing (1)**
26:11
**wishes (1)**
34:2
**within (3)**
11:2;15:21;19:24
**without (1)**
9:12
**witness (3)**
25:9,22;40:1
**witnesses (1)**
33:8
**woman (2)**
31:8;33:4
**word (1)**
13:12
**words (1)**
28:22
**work (11)**
5:13,21;13:14;19:21;
26:16;28:2,10;35:9,21;
39:2,2
**working (3)**
10:3;12:12;25:18
**works (2)**
35:10,11
**write (1)**
19:5
**writing (1)**
15:1
**written (1)**
11:3
**wrong (6)**
19:4,6,13,20,24;20:4
**Wynne (2)**
4:14,14

**Y**

**yesterday (2)**
7:3,4
**York (1)**
5:19
**Yup (2)**
26:13;30:13

**1**

**1 (1)**
35:3
**10:30 (1)**
35:4
**100,000 (1)**
21:21
**10th (1)**
20:25
**11 (1)**
35:3
**12 (1)**
35:3
**12:09 (1)**
11:20
**12:30 (5)**
35:6,8,9,13;37:17
**15th (4)**
25:5,10,21;39:25
**17th (4)**
28:4,4,6;39:21

**2**

**2016 (1)**
39:25
**20th (1)**
27:22
**21st (11)**
27:23,25;28:1,8,9;
29:7;30:2;31:19,25;
37:16;39:5
**22nd (11)**
25:6,14;29:7,11,12,
14;30:9;31:19;37:21;
38:18;39:6
**24th (1)**
20:24
**26f (1)**
20:23

**3**

**3 (1)**
38:23
**3:15-cv-1123 (1)**
4:7
**3:50 (1)**
4:1
**30b6 (7)**
26:1,2,3,5;36:4;
37:15;40:1

**4**

**4:07 (1)**
20:20
**4:27 (1)**
41:16
**43 (2)**
6:21;39:15

**5**

**500 (1)**
21:23
**51 (2)**
24:17;39:14
**52 (1)**
41:6
**56 (1)**
39:14
**57 (6)**
17:23;18:4,11;19:1;
21:7;39:17
**58 (1)**
6:19

**6**

**6:42 (1)**
19:15

**7**

**7th (1)**
40:18

**8**

**8 (1)**
36:11

**9**

**9th (2)**
20:23,24