UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
JANE DOE                      :    Civil No. 3:15CV01123(AVC)
                              :
v.                            :
                              :
HICKS, et al.                 :    September 21, 2016
                              :
------------------------------x
```

### RULING ON AMENDED MOTION FOR SANCTIONS [Doc. #95]

Pending before the Court is the motion of plaintiff Jane Doe ("plaintiff") for sanctions against defendant Sahil, Inc. ("defendant Sahil"). [Doc. #95]. Defendant Sahil filed an untimely response to the Amended Motion for Sanctions, which the Court has ordered stricken. [Doc. #102]. As noted in the Court's Order striking defendant Sahil's response to the Amended Motion for Sanctions, the Court will consider defendant Sahil's previously filed memoranda in opposition to plaintiff's original motion for sanctions,[1] which are docket entries 76 and 88. See Doc. #102 at 5. For the reasons set forth herein, the Court **GRANTS, in part, and DENIES, in part**, plaintiff's Amended Motion for Sanctions.

_____

[1] The original motion is docket entry 71. Judge Alfred V. Covello entered an order finding that motion moot, in light of plaintiff's filing of the Amended Motion for Sanctions. [Doc. #127].

1

## I.    Background

Plaintiff brings this action to redress injuries and other harm she suffered after an alleged sexual assault at the Quality Inn in Windsor Locks, Connecticut. See generally, Doc. #1, Complaint.[2] Plaintiff alleges that at all relevant times, defendant Sahil owned and operated the Quality Inn as a franchisee of Choice Hotels. See id. at ¶16. Also named as a defendant is Angel Hicks ("defendant Hicks"), who was working as the Quality Inn's sole desk clerk on the night of the alleged assault. See id. at ¶16.

Defendants Sahil and Hicks (hereinafter sometimes collectively referred to as the "defendants") served their jointly prepared Rule 26(a)(1)(A) initial disclosures on plaintiff's counsel on October 14, 2015 (hereinafter the "initial disclosures"). [Doc. #95-3]. Defendants' initial disclosures list only two individuals as "likely to have discoverable information," besides those identified in plaintiff's initial disclosures. Those

_____

[2] Following a referral to the undersigned for settlement, Judge Covello also referred this matter to the undersigned for case management. [Doc. #47]. Pursuant to these referrals, the undersigned held numerous in-person and telephonic conferences to ensure that this matter progressed in an expeditious manner, in light of plaintiff's advanced age and the nature of the allegations. The parties have now filed their cross motions for summary judgment, which are not referred to the undersigned.

two individuals are defendant Hicks and Jessica Dimeo, an employee of defendant Sahil. See Doc. #95-3 at 2. Plaintiff represents that these disclosures have never been supplemented. See Doc. #95-1 at 5.

Soon after the initial disclosures were provided, the parties began written discovery. On November 24, 2015, plaintiff received defendant Sahil's responses to its first set of written discovery requests. See Doc. #95-4, Sahil's Responses to Plaintiff's First Set of Interrogatories; Doc. #95-5, Sahil's Responses to Plaintiff's First Set of Requests for Production of Documents. Following the receipt of what plaintiff believed to be complete responses to her written discovery requests, plaintiff's counsel traveled to Connecticut for the purpose of taking and defending a total of eight depositions between December 15, 2015, and December 22, 2015.[3]

---

[3] Judge Covello initially ordered that all fact witnesses be deposed by December 15, 2015. See Doc. #32. Thereafter, to accommodate a settlement conference scheduled for December 7, 2015, the undersigned extended the deadline by which to depose all fact witnesses to December 22, 2015. See Doc. #39. Although the December 7, 2015, settlement conference was eventually canceled, the Court held an in-person conference on December 10, 2015. [Doc. #49]. During that conference, the Court extended the deadline for the completion of fact witness depositions to January 15, 2016, but only as to the deposition of plaintiff's alleged assailant (who is incarcerated) and Choice Hotel's Rule 30(b)(6) designee. See Doc. ##64, 65.

Plaintiff's counsel deposed defendant Hicks on December 19, 2015. See Doc. #95-6, December 19, 2015, Deposition of Angel Hicks ("original Hicks deposition"). During the examination of Hicks by defense counsel, a colloquy occurred which suggested that defense counsel had seen and reviewed Hicks' employment application. See Doc. #95-6 at 108:5-109:25. However, defendant Sahil had asserted in its response to requests for production dated October 22, 2015, that it had no "documents concerning the employment of Defendant Angel Hicks[.]" Doc. #95-5 at 2, Response to Request No. 2.

At approximately 10:50PM on December 20, 2015[4] -- the day after the original Hicks deposition -- defense counsel served amended responses to plaintiff's written discovery requests. See Doc. #95-8, Sahil's Amended Responses to Plaintiff's First Set of Interrogatories and Amended Responses to Plaintiff's First Set of Requests for Production (hereinafter the "amended discovery responses"). Attached to these amended discovery responses were documents that appear to constitute a personnel file for defendant Hicks, including application materials. See Doc. #95-1 at 8; Doc.

---

[4] The amended discovery responses are dated December 21, 2015, and indicate that they were filed on the Court's CM/ECF system on that date. See Doc. #95-8 at 7, 13. It appears, however, that the materials were in fact emailed to plaintiff's counsel on December 20, 2015, and were not filed on the docket.  Discovery materials are not normally filed on the docket, under Rule 5(f) of the Local Rules of Civil Procedure.

#95-7. These materials are indisputably responsive to the plaintiff's requests.

In these amended discovery responses defendant Sahil also identified, for the first time, Eric Moody ("Moody"), a former employee of Sahil, as an individual who supervised defendant Hicks and participated in the decision to hire her. See Doc. #95-7 at 2, Interrogatory No. 2. Mr. Moody was identified in defendant Sahil's initial interrogatory responses as an individual who participated in managing the Quality Inn. See Doc. #95-4 at Interrogatory No. 3. However, because he was not listed in Sahil's initial disclosures, and the information regarding his direct involvement with defendant Hicks had not previously been provided, plaintiff had not arranged to depose Mr. Moody. See Doc. #95-1 at 9.[5]

The deposition of Sahil's 30(b)(6) designee, Mr. Patel, was scheduled to occur on December 21, 2015, at 9:00AM, some ten hours after the amended discovery responses were emailed to counsel. See Doc. #95-1 at 9-10. Because plaintiff's counsel did not have an

---

[5] Plaintiff further represents that for the first time in its amended discovery responses, defendant Sahil identified its 30(b)(6) witness Shailesh Patel ("Patel") as having supervised Hicks and participated in the managing and operation of the Quality Inn. See Doc. #95-1 at 9; see also Doc. #95-8 at Interrogatory Nos. 2, 3. Mr. Patel was not identified in defendants' initial disclosures as an individual likely to have discoverable information.

opportunity to review the amended discovery responses before
Sahil's 30(b)(6) deposition, plaintiff's counsel was "forced to
question Patel about those documents without any preparation."
Doc. #95-1 at 10. During the December 21, 2015, deposition of
Sahil's 30(b)(6) designee, Mr. Patel confirmed that Mr. Moody:
supervised defendant Hicks; provided her with training concerning
guest security; made the decision to hire her; and was responsible
for monitoring crime in and around the Quality Inn. See generally
Doc. #95-9, December 21, 2015, R. 30(b)(6) Deposition of Sahil,
Inc.

By the conclusion of the 30(b)(6) deposition it was clear to
plaintiff that Mr. Moody was an important witness. In light of the
December 22, 2015, fact deposition deadline, however, it was too
late to notice the deposition of Mr. Moody. See Doc. #95-1 at 10.

Accordingly, plaintiff filed an Emergency Motion for
Sanctions, which sought both Rule 37 sanctions and substantive
relief relating to Sahil's production of documents and to the
taking of additional and/or continued fact witness depositions.
[Doc. #71-1 at 16-17]. The undersigned held a telephonic
conference on January 6, 2016, to address the issues raised in the
Emergency Motion for Sanctions. [Doc. #72]. During that
conference, the Court granted the Emergency Motion for Sanctions
to the extent plaintiff requested certain substantive relief.

Specifically, the Court ordered: (1) that plaintiff would be permitted to take the deposition of Mr. Moody, and supplemental depositions of both Hicks and Sahil's 30(b)(6) witness, on or before January 29, 2016; and (2) that by January 13, 2016, defendants Sahil and Hicks provide plaintiff with a written attestation stating under oath "the nature and scope of the search conducted ... for documents responsive to plaintiff's written discovery requests [and] that all responsive non-privileged documents have been produced[.]" Doc. #77 at 2-3. The Court took under advisement plaintiff's request for Rule 37 sanctions. See id. at 2.

In accordance with the Court's order, plaintiff took the supplemental depositions of Hicks and of Sahil's 30(b)(6) witness, Mr. Patel, on January 26, 2016. Plaintiff took the deposition of Mr. Moody on January 25, 2016. Plaintiff states that Mr. Patel's testimony at Sahil's 30(b)(6) supplemental deposition "exposed the egregiousness of Sahil's discovery abuses[,]" including:

> (1)     That at the time Patel signed a January 13, 2016, affidavit attesting to Sahil's discovery compliance, "he understood that he had an obligation to search his emails for documents responsive to Doe's discovery requests, but he had not performed such a search[;]"

> (2)     That Mr. Patel permitted Sahil's counsel to serve its initial disclosures "knowing they were incorrect in that they did not identify

Moody or Patel as persons who might have discoverable information[;]"

(3)   That Mr. Patel permitted Sahil's counsel to serve Sahil's responses to plaintiff's First Set of Interrogatories knowing that those responses omitted "critical information[;]" and

(4)   That Mr. Patel "was aware of the existence of Hicks's personnel file in October 2015 and gave a copy to Sahil's counsel on December 17, 2015[.]"

Doc. #95-1 at 11 (sic). As a result of these alleged abuses, plaintiff contends she "has incurred significant costs and attorneys' fees in seeking redress for -- and conducting three fact witness depositions necessitated by -- Sahil's failure to timely disclose" critical information. Doc. #95-1 at 15.

Defendant Sahil responds that there have been no discovery abuses and that plaintiff inappropriately filed the initial motion for sanctions on an emergency basis without conferring in an effort to resolve the disputes without court intervention. See Doc. #88 at 1-2. Defendant Sahil represents that counsel first received notice of the alleged "discovery abuses" in a December 30, 2015, email correspondence from plaintiff's counsel. See id. at 1-2, 11-14. Defendant Sahil further represents that it "disclosed additional information" pursuant to its continuing duty of disclosure, and that it was "agreeable to additional discovery, made a proposal for discovery compliance to resolve plaintiff

8

counsel's concerns, and made counsel aware [that defense counsel was away through the New Year]." Doc. #88 at 2. Defendant Sahil also represents that no response to this proposal was received, and that plaintiff filed the Emergency Motion for Sanctions without conferring with him. See id. at 2. The Court will address defendant Sahil's arguments with respect to each specific alleged discovery abuse in the discussion below.

## II.  Legal Standard

Rule 26(a) governs the parties' mandatory initial disclosures. Pertinent to the discussion below, Rule 26(a)(1)(A)(i) requires disclosure of:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1)(A)(i). This information is to be provided "without awaiting a discovery request[.]" Fed. R. Civ. P. 26(a)(1)(A).

Rule 26(e) requires supplementation of prior disclosures or responses to discovery:

> A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect,

and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) describes the available remedies when a party fails to comply with these Rules:

> If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: ... may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(C). "The party requesting sanctions under Rule 37 bears the burden of showing that the opposing party failed to timely disclose [the] information" sought. Vineyard Vines, LLC v. Macbeth Collection, LLC, No. 3:14CV1096(JCH), 2015 WL 2179775, at *1 (D. Conn. May 8, 2015); see also Lodge v. United Homes, LLC, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011). "To meet this burden the party must establish (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y.

10

2007) (citing <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2007)). "As to the required level of culpability warranting sanctions under Fed. R. Civ. P. 37(c), the Second Circuit has stated that a 'case-by-case approach to the failure to produce relevant evidence' is appropriate because '[s]uch failures occur along a continuum of fault -- ranging from innocence through the degrees of negligence to intentionality.'" <u>Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.</u>, 302 F.R.D. 288, 293 (E.D.N.Y. 2014) (quoting <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 267 (2d Cir. 1999)).

"An omission or delay in disclosure is harmless where there is 'an absence of prejudice' to the offended party." <u>Lujan v. Cabana Mgmt., Inc.</u>, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (quoting <u>Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC</u>, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)).

Sanctions under Rule 37 are designed to effectuate three goals: "First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed is in some sense at fault." <u>Update Art, Inc. v. Modiin Pub., Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988). "The

imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion." Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp., 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (citation omitted). Accordingly, "[c]ourts enjoy broad discretion in deciding whether and how to fashion a sanction pursuant to Rule 37." Lujan, 284 F.R.D. at 68 (citation omitted).

## III. Discussion

Plaintiff alleges a number of discovery abuses by defendant Sahil, but specifically seeks the imposition of sanctions against defendant Sahil only for two alleged violations of Rule 26: (1) the failure to identify Mr. Moody in the initial disclosures as an individual with discoverable information; and (2) the failure to timely disclose Hicks' personnel file. See Doc. #95-1 at 14. The Court will apply the three elements identified by Residential Funding Corp., 306 F.3d at 107, and other Second Circuit precedents, in evaluating each of plaintiff's claims.

### A. Initial Disclosures and Identification of Mr. Moody

Plaintiff first contends that defendant Sahil had an obligation to identify Mr. Moody in the initial disclosures, or at the very least, to timely supplement those disclosures, in light of the information disclosed in Mr. Patel's deposition testimony.[6]

---

[6] Mr. Patel is "employed by Sahil, Inc., and [is] the Treasurer and

See Doc. #95-1 at 14. Plaintiff submits that Mr. Patel knew of Mr. Moody's potential importance to this case in October 2015, but failed to disclose that information until it was too late for plaintiff to depose him prior to the December 22, 2015, fact witness deposition deadline. See Doc. #95-1 at 14. Defendant Sahil responds that Mr. Moody "is a former employee that was not present at the premises at the time of the incident. The defense was not aware of him being a critical witness to this lawsuit, and timely disclosed information about him that came up in response to discovery requests and questioning." Doc. #88 at 5. Defendant Sahil further represents that when, after the completion of the defense depositions, plaintiff's counsel insisted on conducting the deposition of Mr. Moody, defense counsel consented and offered his assistance in both locating Mr. Moody, and securing his cooperation to participate in a deposition. See id.

The Court first considers whether Defendant Sahil had an obligation to timely disclose the identity of Mr. Moody as an individual with discoverable information. Defendant Sahil's amended discovery responses and the deposition testimony of Sahil's 30(b)(6) witness, Mr. Patel, each support a finding that

---

clerk of the corporation." Doc. #88 at 15, Affidavit of Shailesh D. Patel.

Mr. Moody should have been identified in defendants' initial disclosures as an individual likely to have discoverable information.

Defendants served their initial disclosures, which did not identify Mr. Moody, on October 14, 2015. [Doc. #95-3]. About two months later, in its amended discovery responses, defendant Sahil for the first time identified Mr. Moody as having both supervised defendant Hicks and participated in the decision to hire her. See Doc. #95-8 at Interrogatory Nos. 2 and 6. During Sahil's initial 30(b)(6) deposition in December 2015, Mr. Patel testified that Mr. Moody, as general manager of the Quality Inn, was instructed to monitor any criminal activity that occurred in and around the premises of the Quality Inn. See Doc. #95-9, December 21, 2015, R. 30(b)(6) Deposition of Sahil, Inc., at 22:13-23. He also testified that Mr. Moody had the authority to hire defendant Hicks. See id. at 29:17-20. During the supplemental deposition of Sahil's 30(b)(6) designee, Mr. Patel further admitted knowing this information at the time defendants served the initial disclosures:

> Q:   And at the time that [the initial disclosures were]
>      filed in this case on 10/14, October 14, 2015, you
>      knew that Moody as well as you would be persons who
>      might have information, correct, concerning the
>      hiring of Hicks and the facts related to this case;
>      isn't that true?
>
> ...

A:   Yes.

Q:   But it's not on there, is it?

A:   No, it's not.

...

Q:   Did you see this document before it was filed?

A:   Yes.

...

Q:   So isn't it true that you knowingly allowed this
     document [defendants' initial disclosures] to be
     sent to counsel for Doe where you knew the
     information was wrong, because you knew Moody had
     managed the hotels, and as a matter of fact, he was
     managing the night the rape occurred; you knew
     that, isn't that true?

...

A:   Yes.

Doc. #95-10, January 26, 2016, Supplemental R. 30(b)(6) Deposition
of Sahil, Inc., at 115:5-25; 117:4-20.

Rule 26 explicitly provides: "A party must make its initial
disclosures based on the information then reasonably available to
it. A party is not excused from making its disclosures because it
has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E).
The supplemental deposition testimony of Sahil's 30(b)(6) designee
belies defendant Sahil's representation that the "defense was not
aware of [Mr. Moody] being a critical witness to this lawsuit[.]"
Doc. #88 at 5. Indeed, Mr. Patel has admitted, under oath, that he

was aware in October 2015 that Mr. Moody had discoverable information. See Doc. #95-10, January 26, 2016, Supplemental R. 30(b)(6) Deposition of Sahil, Inc., at 115:5-15.

Plaintiff's complaint includes claims for negligent supervision, failure to provide adequate security, and negligent hiring. See Doc. #1, Complaint, at Counts IV, VI and VII. Mr. Moody participated in the management and security of the Quality Inn, and he was involved in the supervision and hiring of defendant Hicks. Given these facts, there is no reasonable basis on which the defense could contend that Mr. Moody was not likely to have discoverable information; to the contrary, he would seem to be one of only a handful of key witnesses. Accordingly, the Court finds that defendant Sahil had an obligation to disclose Mr. Moody in its Rule 26(a) initial disclosures as an individual likely to have discoverable information.

Having found that defendant Sahil failed to meet its obligations under Rule 26(a) as to the disclosure of Mr. Moody, the Court next considers whether defendant Sahil had a culpable state of mind. The Eastern District of New York has comprehensively discussed this element:

> The culpable state of mind element is satisfied by a showing that a party has breached a discovery obligation through bad faith or gross negligence or ordinary negligence. Failures to produce relevant evidence occur along a continuum of fault -- ranging from innocence

16

through the degrees of negligence to intentionality, and courts must therefore take a case-by-case approach in determining the level of culpability. In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding. A party is negligent even if the failure results from a pure heart and an empty head.

Markey v. Lapolla Indus., Inc., No. 12CV4622(JS)(AKT), 2015 WL 5027522, at *17 (E.D.N.Y. Aug. 25, 2015) (internal citations and quotation marks omitted), report and recommendation adopted, No. 12CV4622(JS)(AKT), 2016 WL 324968 (Jan. 26, 2016). There is insufficient evidence before the Court to conclusively find that defendant Sahil intentionally, or with bad faith, failed to disclose Mr. Moody in its initial disclosures. However, the failure to identify Mr. Moody does rise to the level of negligence, as defined by the Markey court. See id. Defendant Sahil contends that there has been "full cooperation in discovery by the defense[.]" Doc. #88 at 10. That may be so. "The fact that counsel may have engaged in discovery in good faith does not, however, absolve its culpable conduct because the relevant state of mind for sanctions under Rule 37(c) is ordinary negligence, not intentional conduct." Markey, 2015 WL 5027522, at *22 (citation and internal quotation marks omitted). To the contrary, defense counsel's "purported ignorance [of Moody's importance] only serves to highlight [defendant Sahil's] failure to perform its

obligations with the necessary diligence required under Rule 26(g)(1)'s 'reasonable inquiry' requirement." <u>Markey</u>, 2015 WL 5027522, at 23. Accordingly, the Court finds that the second element supporting an award of Rule 37 sanctions has been satisfied.

Turning to the final element of relevance, "the standard of proof depends on the level of culpability." <u>Id.</u> at *17. "Where the breach of discovery obligations was merely negligent, the term 'relevant' in the context of Rule 37 means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. That is, the evidence must be such that a reasonable trier of fact could find that it would support that claim or defense." <u>Id.</u> (internal citations and quotation marks omitted) (footnote omitted). Here it is without dispute that Mr. Moody, whom Mr. Patel admitted participated in the monitoring of security and management of the Quality Inn, as well as the supervision and hiring of defendant Hicks, was likely to have relevant testimony as to at least three of plaintiff's claims, and defendant Sahil's defense of those claims. Accordingly, the Court finds that the third element of relevance has also been satisfied.

Finding that plaintiff has met her burden to support the imposition of Rule 37 sanctions, the Court now turns to whether defendant Sahil's failure to comply with the mandates of Rule

26(a) was "substantially justified" or "harmless." See Ritchie Risk, 280 F.R.D. at 158-59 ("Even where there is violation of Rule 26(a) or (e), courts may not impose sanctions under Rule 37(c)(1) where a party's failure to comply was 'substantially justified' or where the conduct was 'harmless.'" (citing Fed. R. Civ. P. 37(c)(1))). Defendant Sahil bears the burden of proving that its non-compliance was substantially justified or harmless. See id. at 159.

"Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure [requirement], or if there exists a genuine dispute concerning compliance." Ritchie Risk, 280 F.R.D. at 159 (citation and internal quotation marks omitted). Defendant Sahil has failed to show substantial justification. Defendant Sahil contends, essentially, that non-disclosure of Mr. Moody was justified because Mr. Moody "is a former employee that was not present at the premises at the time of the incident." Doc. #88 at 5. However, as noted above, this action includes claims relating to negligent supervision, failure to provide adequate security, and negligent hiring. The evidence related to these claims will not be limited to the testimony of witnesses present at the time of the incident. Had defendants conducted even the most cursory

19

inquiry upon being served with the Complaint, they would have identified the persons responsible for hiring and supervising defendant Hicks, including Mr. Moody, as potentially having discoverable information. The non-disclosure is, thus, not substantially justified.

Defendant Sahil has also failed to show that the non-disclosure of this information was harmless. "Harmlessness means an absence of prejudice to the [plaintiff]." Ritchie Risk, 280 F.R.D. at 159 (citation omitted). Defendant Sahil does not appear to argue that the failure to disclose the information at issue did not prejudice plaintiff. Although defendant Sahil consented to the taking of Mr. Moody's deposition, and indeed offered to assist with locating him for the deposition, by the time plaintiff realized the importance of Mr. Moody's testimony, she was forced not only to seek court intervention to extend the fact witness deposition deadline, but also to schedule a second trip to Connecticut for purposes of taking Mr. Moody's deposition. Additionally, the late disclosure of Mr. Moody likely impacted discovery strategies formulated by plaintiff's counsel, including, for example, the order in which to depose witnesses. Accordingly, the Court finds that defendant Sahil has not satisfied its burden of demonstrating that the non-disclosure was substantially justified or harmless.

Therefore, the Court finds that sanctions under Rule 37 are warranted for defendant Sahil's failure to identify Mr. Moody as an individual with discoverable information in its initial disclosures. The Court next turns to whether sanctions are also warranted in light of the late disclosure of Hicks' personnel file.

**B. Late Disclosure of Hicks' Personnel File**

As an additional basis for the award of sanctions, plaintiff points to defendant Sahil's failure to timely produce defendant Hicks' personnel file. See Doc. #95-1 at 14. The same analysis applied above guides the Court's evaluation of whether sanctions are warranted for this alleged discovery abuse. See In re Sept. 11th, 243 F.R.D. at 125. That is, plaintiff bears the burden of establishing: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." Id. (citation omitted).

The Court finds that defendant Sahil had an obligation to timely produce the personnel file, and that it is relevant to plaintiff's claims. Plaintiff's requests for production clearly called for it. "Timely" production would have been made in the

responses to the First Set of Requests for Production of Documents or, at the very least, prior to Hicks' deposition. Defendant Sahil's counsel contends that the personnel file "was identified" during the course of his preparation for Sahil's 30(b)(6) deposition, and that defendant Sahil's disclosure of it thereafter was timely. See Doc. #88 at 2. Counsel asserts that "it did not occur to [him] that there was any information that was needed for questioning at the Hicks deposition[.]" Id. at 3. The difficulty with this explanation is that defendants' counsel **did in fact engage in questioning at the Hicks deposition based on the material in the personnel file**. See Doc. #95-6, Original Hicks Deposition, at 108:5-109:25.

The Court further finds that defendant Sahil was, at best, negligent in failing to produce the personnel file earlier. The fact that defense counsel did not come into possession of the personnel file until just before Hicks' original deposition is not mitigating on this point; if anything, it may be an aggravating factor. It is well-established that counsel has a duty to conduct a "reasonable inquiry" in response to discovery requests, and must certify that responses are "complete and correct as of the time" they are made. Fed. R. Civ. P. 26(g)(1). Indeed, "Rule 26(g) imposes on counsel an affirmative duty to engage in pretrial discovery responsibly and is designed to curb discovery abuse by

explicitly encouraging the imposition of sanctions." Metro. Opera
Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l
Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) (internal citation and
quotation marks omitted). A personnel file is a basic, essential
item, of central importance in any case alleging negligent hiring
or improper employee conduct. It was, apparently, in the
possession of defendant Sahil all along. As such, "there is no
doubt that [defendant Sahil] had the legal and practical ability
to obtain" it at the outset of discovery. Raimey v. Wright Nat.
Flood Ins. Co., 76 F. Supp. 3d 452, 456 (E.D.N.Y. 2014).

The remaining inquiry, therefore, is whether the delay in
producing defendant Hicks' personnel file was harmless or
substantially justified. The Court cannot find the delay in
production substantially justified as no actual justification has
been proffered. Defendant Sahil argues, essentially, that the
delay was harmless because there was -- or should have been -- "an
absence of prejudice" to plaintiff. See Lujan, 284 F.R.D. at 68.
Plaintiff claims that the production of Hicks' personnel file
after Hicks' deposition and the night before Sahil's 30(b)(6)
deposition prejudiced plaintiff in that: (1) counsel was unable to
use this document to prepare for Sahil's 30(b)(6) deposition; and
(2) counsel was unable to question Hicks about the document during
her deposition, thereby causing plaintiff to incur significant

23

costs and attorney fees in seeking permission to take, and
eventually conducting, the supplemental depositions of Sahil's
30(b)(6) designee and defendant Hicks. Defendant Sahil counters:

> At the Sahil deposition plaintiff counsel used the
> supplemental compliance [Hicks' personnel file and
> amended discovery responses], marked it as an exhibit,
> and questioned the witness on it. At no time did
> plaintiff counsel raise concerns at the Sahil
> deposition, or at any of the other depositions taken on
> December 21st or 22nd that the supplemental compliance
> impaired the questioning at either the Sahil deposition
> or the deposition of Hicks.
>
> Had plaintiff raised the need for further questioning of
> Hicks based on the supplemental disclosure, the
> undersigned counsel would have brought her back for
> further questioning at the ongoing deposition sessions.

Doc. #88 at 3 (sic); see also id. at 6.

The question of prejudice is a close one here. On balance, if
the only harm were related to the lack of preparation time in
advance of the Sahil 30(b)(6) deposition, the Court might be
inclined to find a lack of prejudice. Plaintiff was compelled to
take a supplemental 30(b)(6) deposition because of the non-
disclosure of Mr. Moody, and therefore, the failure to timely
disclose Hicks' personnel file did not, on its own, necessitate
that supplemental deposition. However, the prejudice relating to
Hicks' own deposition is more concerning. By failing to provide
the personnel file to plaintiff's counsel, but using the
information it contained in the cross-examination of Hicks,

defendant Sahil placed plaintiff at a distinct disadvantage. Plaintiff was, as a result, forced to conduct a supplemental deposition of Hicks. Defendant Sahil argues that, "[h]ad plaintiff raised the need for further questioning of Hicks based on the supplemental disclosure, [defendants' counsel] would have brought her back for further questioning at the ongoing depositions sessions." Doc. #88 at 3. The Court is not persuaded that plaintiff's failure to request this supplemental deposition on December 21, 2015, after completing the deposition of Sahil's 30(b)(6) witness and plaintiff's son, on the day before the close of discovery, places the liability for the need for the supplemental deposition with plaintiff's counsel. Defendant Sahil's failure to produce Hicks' personnel file in advance of Hicks' deposition, particularly where defendants' counsel had it in his possession at that time and posed questions at the deposition based, it seems, on his review of it, was not harmless.

Accordingly, the Court finds that an award of sanctions is also warranted on the basis of defendant Sahil's untimely disclosure of defendant Hicks' personnel file.

### C.   Nature of Appropriate Sanction

Having found sanctions warranted based on defendant Sahil's failure to identify Mr. Moody and to produce Hicks' personnel file in a timely manner, the Court next addresses the appropriate

sanction to be awarded. Plaintiff seeks the imposition of the
following sanctions: striking Sahil's Answer and Special Defenses;
award of costs and fees incurred in drafting and arguing
plaintiff's Emergency Motion for Sanctions; award of costs and
fees incurred in preparing and taking the deposition of Mr. Moody
and the supplemental depositions of Sahil's 30(b)(6) witness and
defendant Hicks; and award of the costs incurred in drafting the
motion now at issue.

Although Rule 37 permits the Court to strike pleadings in
whole or in part, such a measure is an "extreme sanction[], to be
deployed only in rare situations." Burke v. ITT Auto., Inc., 139
F.R.D. 24, 31 (W.D.N.Y. 1991) (collecting cases).

> A court considers several factors when deciding whether
> to exercise its broad discretion to order sanctions,
> including "(1) the willfulness of the non-compliant
> party or the reason for noncompliance; (2) the efficacy
> of lesser sanctions; (3) the duration of the period of
> noncompliance[;] and (4) whether the non-compliant party
> had been warned of the consequences of [his] non-
> compliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d
> 298, 302-03 (2d Cir. 2009).

Hawley v. Mphasis Corp., 302 F.R.D. 37, 46 (S.D.N.Y. 2014). "[A]
court should impose the least harsh sanction that can provide an
adequate remedy." Id. (citation and internal quotations omitted).

Here, the Court does not find that striking defendant Sahil's
Answer and Special Defenses is appropriate. Were the Court to
strike defendant Sahil's Answer and Special Defenses, it would

naturally follow that plaintiff would seek the entry of a default against defendant Sahil. In this Circuit, there is a "well established preference for resolving cases on their merits[.]" Fappiano v. MacBeth, No. 3:09CV00043(CSH), 2010 WL 1839946, at *2 (D. Conn. May 7, 2010); see also New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (noting the Second Circuit has "expressed a strong 'preference for resolving disputes on the merits[]'" versus entering default judgments (quoting Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001))).

Additionally, the Court has not found that defendant Sahil's non-compliance was willful, but that the record supports instead a finding of negligence. Also weighing against striking defendant Sahil's Answer and Special Defenses is that the duration of non-compliance lasted only a few months.[7] As noted by defendant Sahil, discovery in this matter has been expedited. This is not a case where the identity of a key witness was disclosed on the eve of trial, but rather, before (if barely) the close of discovery and the filing of dispositive motions. Plaintiff was ultimately able

---

[7] Although, apparently, defendants have yet to amend their initial disclosures to reflect Mr. Moody as an individual with discoverable information, this information was at least provided in substance to plaintiff by December 2015.

to depose Mr. Moody, and had the benefit of such testimony in opposing defendants' motion for summary judgment.

The law of this Circuit requires that the Court consider the efficacy of lesser sanctions to effectuate the goals of Rule 37. See Morales v. Cancun Charlie's Rest., No. 3:07CV1836(CFD), 2009 WL 3682449, at *6 (D. Conn. Oct. 30, 2009). Here, the factors considered by the Court above, and the availability of lesser sanctions, weigh against striking defendant Sahil's Answer and Special Defenses. "Courts in this circuit have often awarded attorneys' fees to sanction a party who disregards his discovery obligations." Tourmaline Partners, LLC v. Monaco, No. 3:13CV00108(WWE), 2014 WL 4810253, at *8 (D. Conn. Sept. 23, 2014) (collecting cases). The Court finds that the imposition of lesser sanctions, namely an award of costs and attorney's fees, will effectuate the goals of Rule 37.

The Court declines to award a precise amount at this time; the Court will instead defer that finding until the disposition of the pending summary judgment motions. Nevertheless, the Court is inclined to award plaintiff her costs incurred for counsel's travel to Connecticut for the taking of Mr. Moody's deposition and Hicks' supplemental deposition, and a portion of the fees related to the Emergency Motion for Sanctions and Amended Motion for Sanctions. See Ritchie-Risk, 280 F.R.D. at 162 ("[T]he Court [has]

28

authority to shift certain discovery costs to [defendant], so as
to avoid burdening [plaintiff] with costs [she] would not have
incurred, but for [defendant's] non-compliance with the discovery
rules." (alterations added)).

Finally, embedded within defendant Sahil's supplemental
memorandum in opposition is a cross-motion for sanctions, which is
less than two pages long. See Doc. #88 at 10. The motion contends
that there were "discovery abuses by the plaintiff in that (1)
there was a failure to attempt to resolve issues prior to the
filing of [the Emergency Motion for Sanctions]; and (2) a
misrepresentation about documentation identified by Mr. Moody[.]"
Id. at 11. As an initial matter, this "motion" is not properly
docketed and fails to comply with the District of Connecticut
Local Civil Rules, because it is not accompanied by a memorandum.
This alone would be sufficient grounds on which to deny the cross-
motion for sanctions. See D. Conn. L. Civ. R. 7(a)(1) ("Any motion
involving disputed issues of law shall be accompanied by a written
memorandum of law and shall indicate in the lower margin of the
motion whether oral argument is requested. Failure to submit a
memorandum may be deemed sufficient cause to deny the motion.").
Further, by burying this request in a memorandum in opposition,
defendant Sahil denied plaintiff an opportunity to respond
adequately, as the rules governing memoranda in opposition differ

29

from those governing reply briefs, both in terms of filing
deadlines and page constraints. Compare D. Conn. L. Civ. R.
7(a)(1)-(2) ("Unless otherwise ordered by the Court, all memoranda
in opposition to any motion shall be filed within twenty-one (21)
days of the filing of the motion ... Except by permission of the
Court, briefs or memoranda shall not exceed forty (40) 8 1/2" by
11" pages of double spaced standard typographical print, exclusive
of pages containing a table of contents, table of statutes, rules
or the like.") with, D. Conn. L. Civ. R. 7(d) ("Any reply brief
must be filed within fourteen (14) days of the filing of the
responsive brief to which reply is being made, as computed under
Fed. R. Civ. P. 6. A reply brief may not exceed 10 pages[.]"). In
any event, the motion fails on its own merits. Defendant Sahil's
motion sets forth no rule or case law pursuant to which it
contends the Court should award sanctions. Accordingly, the Court
**DENIES** defendant Sahil's cross-motion for sanctions.

The Court also notes its particular concern with the
allegations -- and indeed admissions -- that Mr. Patel submitted a
false affidavit concerning defendant Sahil's document production,
and permitted counsel for Sahil to serve defendants' initial
disclosures and responses to discovery knowing that they omitted
relevant evidence. See Doc. #95-1 at 11; see also Doc. #95-10,
January 26, 2016, Supplemental R. 30(b)(6) Deposition of Sahil,

Inc., at 93:7-16; 114:12-117:13; 122:15-126:7; 131:10-136:22. The Court takes such allegations very seriously. However, because this is not an explicit basis on which plaintiff seeks the imposition of sanctions, see Doc. #95-1 at 14, the Court declines to award sanctions on this basis. Nevertheless, if Mr. Patel testifies at trial, he may be subject to cross-examination with respect to these issues. Defendants may also be precluded from relying on, or otherwise introducing at trial, any documents not properly produced in discovery. This Court leaves such evidentiary matters to the sound discretion of the trial judge.

## IV.  Conclusion

Accordingly, for the reasons articulated above, the Court **GRANTS, in part, and DENIES, in part,** plaintiff's Amended Motion for Sanctions. [**Doc. #95**].

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.[8]

_____

[8] Because the Court is not ordering a dispositive sanction, this is not a recommended ruling, and is subject to review under the clearly erroneous standard. See, e.g., Thomas E. Hoar, Inc. v.

SO ORDERED at New Haven, Connecticut this 21st day of September 2016.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

_____

Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'nondispositive' of the litigation." (citation omitted)); Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc., 174 F.R.D. 301, 303-04 (S.D.N.Y. 1997) ("[T]he imposition of sanctions is reviewable under the 'clearly erroneous or contrary to law' standard unless the sanction itself can be considered dispositive of a claim." (collecting cases)); Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 5-6 (1st Cir. 1999) (stating that a magistrate judge's imposition of discovery sanctions should be considered dispositive only where such sanctions "fully dispose[] of a claim or defense" and thus fall within the "same genre as the enumerated motions" of §636(b)(1)(A)).